**GREAT WEST FOOD PACKERS, INC.,**
**Plaintiff-Appellant,**

v.

**LONGMONT FOODS CO., INC.,**
**Defendant-Appellee.**

**No. 80CA0996.**

Colorado Court of Appeals,
Div. I.

Sept. 24, 1981.

Clayton W. Bell, Boulder, for plaintiff-appellant.

Berenbaum & Berenbaum, Charles P. Leder, Denver, for defendant-appellee.

ENOCH, Chief Judge.

Plaintiff, Great West Food Packers, Inc., (Great West) appeals a judgment of the trial court denying it damages sustained as a result of the breach of an implied warranty of merchantability of food products sold by defendant, Longmont Food Co., Inc., (Longmont) to plaintiff. We reverse.

In September 1977, Great West entered into a contract to purchase fresh turkey meat products from Longmont. The products were shipped by Longmont from its manufacturing plant in Longmont, Colorado, to Los Angeles, California. From there, Great West distributed the product to its retail customers throughout California.

Soon after shipment began, Great West informed Longmont that an unusually high percentage (greater than 2%) of the meat was being returned by its customers because of spoilage. Testimony at trial revealed that in the processed food industry the term "spoil" includes products which are unsaleable because of premature decomposition, damaged packaging, or expiration of the code date. The code date is printed on the package of the product and specifies the latest date on which the product may safely be sold.

Great West reimbursed the retail purchasers of the "spoiled" products by crediting their accounts and making the notation "spoil credit" on the customer invoices. Great West, in turn, sought reimbursement for the credits given, and ultimately withheld payment of $8,762.99, the amount unpaid on part of the orders placed and received by Great West.

The trial court denied Great West any damages and entered judgment on Longmont's counterclaim in the amount of $8,762.99 on the unpaid account. The court found that a substantial amount of the products breached the implied warranty of merchantability, but that the damages alleged were too speculative because Great

West could not show which particular goods were defective. We hold that the trial court placed an unreasonable burden on the plaintiff by requiring such particularized proof. We, therefore, reverse the judgment and remand the cause for a new trial on the issue of damages.

Colorado courts have recognized two rules of damages which are controlling in this case. First, although damages may not be calculable with mathematical exactitude, so long as the plaintiff introduces some evidence which is sufficient to allow a reasonable estimate of damages, it is incumbent upon the trier of fact to determine a monetary award which will adequately compensate the plaintiff. Section 4–1–106, C.R.S.1973 (Official Comment 1); *Peterson v. Colorado Potato Flake & Manufacturing Co.*, 164 Colo. 304, 435 P.2d 237 (1967); *Cooper v. Hollis*, 42 Colo.App. 505, 600 P.2d 109 (1979). *See also Goldstein v. Rocky Mountain Envelope Co.*, 78 Colo. 341, 241 P. 1110 (1925). The rule which precludes the recovery of speculative damages applies only where the fact of damages is uncertain, and not where the amount of damages is uncertain. Second, where a plaintiff's total damages can be ascertained, and they stem from a number of defective products manufactured by the same defendant, it is not necessary to allocate damages among specific items. *Prutch v. Ford Motor Co.*, Colo., 618 P.2d 657 (1980).

Applying these rules to the instant case, we conclude that Great West presented sufficient evidence for the trial court to determine and award damages.

Initially, we note that Great West attempted to introduce into evidence its business records and customer invoices to show that products worth $10,101.99 had spoiled, and that spoil credits were given. The court admitted the records as evidence that credits were given, but held that the records were inadmissible as proof of the fact of spoilage. The court reasoned that the fact of spoilage was based on the hearsay statements of the customers who returned the products. We hold that the trial court erred in not considering the business records as proof of spoilage.

A statement, although hearsay, may be admissible if it qualifies under an exception to the hearsay rule. Colorado Rules of Evidence 803(6) provides that records are admissible if made "at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity . . . ."

The record shows that Great West regularly requires its employees to inspect returned goods prior to giving spoil credits. Once the fact of spoilage is verified by an employee, a record is made by Great West based on the employee's investigation. In some cases Great West prepared the records from the statements of Longmont's agent in California, who also inspected the goods. The records in question were thus prepared by persons with first-hand knowledge of the condition of the goods and who were under a duty to their employer to report accurately what they knew.

These business records, when properly considered, establish an upper limit on plaintiff's total damages. The trial court will have to ascertain the proportion of the $10,101.99 worth of goods for which spoil credits were given which were merchantable or unmerchantable. Although Great West need not show the reason why spoil credits were given for any particular product, it should be given an opportunity to present evidence as to what percentage of the returned goods breached the implied warranty.

Great West further contends that the trial court erred in refusing to consider whether Longmont breached an express warranty. We disagree.

The trial court issued an order limiting the issues at trial and that order did not include the express warranty question. A pretrial order, if not objected to, controls the introduction of evidence at trial, *Shira v. Wood*, 164 Colo. 49, 432 P.2d 243 (1967). And, the mere failure to label the minute order as a pretrial order does not mean that it is without binding effect.

Here, Great West assented to the trial court's pretrial order limiting the issues at trial to breach of implied warranty. At trial, Great West, after attempting to introduce evidence on the express warranty theory, again agreed to the pretrial order and elected not to move for a modification of the order. Great West did not object to the order until its motion for new trial. Even if Great West's equivocal complaints at trial can be interpreted as a request to modify the pretrial order, the court acted within its discretion when it chose not to honor that request. C.R.C.P. 16(c).

The parties acknowledge that under an implied warranty theory, Great West would not be entitled to recover the full value of the unmerchantable goods, *i. e.*, those which deteriorated prematurely or were delivered with an unreasonably short code date, because, as the record discloses, it is accepted in the trade that one to two percent of a shipment of these types of products is returned due to spoilage. Thus, to arrive at the damage award, the court will have to determine the acceptable percentage of spoilage and deduct that amount from the total of the unmerchantable goods.

The judgment is reversed and the cause is remanded for a new trial on damages.

STERNBERG and KIRSHBAUM, JJ., concur.