[No. A039580. First Dist., Div. Two. July 14, 1988.]

RICHARD P., Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY,
Respondent;
GERALD B. et al., Real Parties in Interest.

COUNSEL

Allan R. Moltzen, Jr., and Russell & Moltzen for Petitioner.

No appearance for Respondent.

Donald J. Dowling and Ross, Hackett, Dowling, Valencia & Walti for Real Parties in Interest.

OPINION

**SMITH, J.**—Petitioner Richard P. seeks a writ of mandate to compel the superior court to set aside its order overruling a demurrer to a complaint for

damages filed against him by real parties in interest Gerald B., Ludelle M. and Donald M. We conclude that the trial court erred in overruling the demurrer and consequently issue a peremptory writ of mandate.

Richard P. and Linda B., then the wife of Gerald B., had an affair while Linda and Gerald were married and cohabiting. During the course of this affair, two children were born to Linda: Amanda, born August 27, 1983, and Adam, born October 17, 1984. On October 2, 1985, Linda filed a petition for legal separation in which she alleged that the children were the issue of her marriage to Gerald.[1]

Richard filed a complaint to establish his paternity of Amanda and Adam on March 24, 1986. His action was consolidated with Linda and Gerald's dissolution action in July 1986. Gerald filed an answer to that complaint denying that Richard was the father of the children and alleging that the children were born to his wife while she was cohabiting with him and that he was not impotent or sterile during the period the children were conceived. On January 6, 1987, a stipulated judgment was entered. The judgment provided in pertinent part that Linda and Richard are the natural parents of Amanda and Adam and that the last name of the children be changed to that of Richard. Gerald waived any claim as either natural or presumptive father of the children. He also waived any claim against Linda relating to the parentage of the children, whether based on deceit, fraud or otherwise. Joint legal custody of the children was awarded to Linda and Richard with Linda having physical custody. Both Richard and Gerald were allotted scheduled visitation with the children. Richard agreed to pay Linda $400 per month per child for child support and to maintain medical and dental coverage for the children. Linda waived any claim for child support arrearages from Gerald, and Gerald waived any claim for refund of child support payments previously made to Linda.

The complaint in this action was filed on February 13, 1987, by Gerald and his mother and stepfather, Ludelle and Donald M. It purported to state claims against Richard for fraud and intentional infliction of emotional distress. Richard demurred to the complaint for failure to state a cause of action. On July 27, 1987, the trial court entered its order overruling the demurrer. This petition for a writ of mandate followed. We issued an order to show cause and placed the matter on calendar.

The first cause of action of the complaint alleges that Richard, who knew Linda was married to Gerald, had sexual intercourse with Linda on or

---

[1] Pursuant to Evidence Code sections 459, subdivision (a) and 452, subdivision (d), we take judicial notice of the legal separation and dissolution proceedings of Linda and Gerald as well as a paternity action filed by Richard to establish his paternity of Amanda and Adam. Those proceedings were all consolidated in the superior court.

about December 1982, with the intent of making her pregnant; that subsequently Amanda was born in August 1983 and resided with Gerald; that Richard knew approximately two weeks after the child's conception that he was the father of Amanda; that Richard subsequently became godfather of Amanda with Gerald's consent; that Richard was aware from December 1982 through February 14, 1986, that Gerald believed himself to be the father of Amanda; that Richard was at all times aware that Gerald was supporting Amanda and that he and Ludelle and Donald were becoming emotionally attached to the child; that Richard had a duty to disclose the true facts of Amanda's parentage to Gerald and failed to make such disclosure; and that such duty to disclose arose from Richard's statutory and equitable duty to support his illegitimate child and because Richard knew that the true facts of Amanda's parentage were neither known nor readily accessible to Gerald, and because Gerald reposed a special trust and confidence in Richard as the godfather of the child.

The first cause of action alternatively alleged that on or about August 27, 1983, Richard falsely represented that Gerald was the father of Amanda and specifically congratulated Gerald on becoming a father to the child; that the representations were known by Richard to be false and were made with the intent to defraud and deceive Gerald and to induce him to support the child; that in reliance upon these representations Gerald did support the child and that his reliance was justified because he was then married to the natural mother of the child. It was then alleged that as a result of Richard's fraud and deceit Gerald was induced to support the child and thereby damaged in a presently undetermined amount and that Richard acted with oppression, fraud and malice, thereby entitling Gerald to punitive damages in the sum of $250,000.

The second cause of action contained virtually identical allegations with respect to the facts concerning Adam's parentage. Appropriate modifications were made to reflect Adam's birth date of October 27, 1984. Additionally, it was alleged that Richard knew approximately four weeks after the conception of this child, rather than two weeks (as alleged in the case of Amanda), that he was the father of Adam.

The third cause of action alleged that Richard intentionally misled Gerald and Ludelle and Donald into believing that Gerald was the father of Amanda despite the fact that there were many occasions on which Richard and the plaintiffs socialized and that Richard thereby had the opportunity to reveal the facts of Amanda's true parentage; that the plaintiffs were not informed of Richard's paternity of Amanda until February 14, 1986, after they had emotionally bonded with the child who was then two-and-a-half years of age; that Richard's conduct was intentional and malicious and done

for the purpose of causing, and was substantially certain to cause, Gerald to suffer humiliation, mental anguish, and emotional and physical distress; and that Richard's acts were done with a wanton and reckless disregard of the consequences to all three plaintiffs. It was further alleged that as a result of Richard's acts, the three plaintiffs suffered severe humiliation, nausea, mental anguish, and emotional and physical distress, entitling them to compensatory damages in a presently undetermined amount and punitive damages in the amount of $250,000 for each plaintiff.

The fourth cause of action contained allegations virtually identical to those set forth in the third cause of action but relating to the facts concerning the parentage of Adam rather than Amanda. An appropriate adjustment was made to reflect Adam's age of one year and four months at the time the plaintiffs learned that Richard was the father of the children. Additionally, this cause of action sought punitive damages in the amount of $1 million.

Richard contends that the action herein is barred by Civil Code section 43.5, sometimes referred to as "anti-heart balm" legislation (see *In re Marriage of Buckley* (1982) 133 Cal.App.3d 927, 931-932 [184 Cal.Rptr. 290]), which provides as follows: "No cause of action arises for: (a) Alienation of affection. (b) Criminal conversation. (c) Seduction of a person over the age of legal consent. (d) Breach of promise of marriage." He argues that although the action is styled as one for fraud and intentional infliction of emotional distress, the claims alleged are merely camouflaged claims for criminal conversation or alienation of affection and, as such, are barred by the foregoing statute. He alternatively characterizes the action as an impermissible extension of "heart balm" actions. Real parties in interest, on the other hand, contend that the "anti-heart balm" legislation has no application here because the lawsuit is based upon the fraudulent and intentional acts of Richard after he engaged in sexual intercourse with Linda.

■ We need not determine whether this action is one that technically falls within the scope of the "anti-heart balm" legislation, for we conclude that it is barred by the public policy of this state.

We agree with real parties in interest that they have alleged words which normally would suffice to state tort causes of action for fraud and intentional infliction of emotional distress. We feel that the subject matter of the action, however, is not one in which it is appropriate for the courts to intervene. ■ "Broadly speaking, the word 'tort,' means a civil wrong, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages. It does not lie within the power of any judicial system, however, to remedy all human wrongs. There are many

wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of the feelings of others are beyond any effective legal remedy and any practical administration of law. (Prosser, Torts (3rd ed. 1964) ch. 1, §§ 1 and 4, pp. 1-2, 18, 21.) To attempt to correct such wrongs or give relief from their effects 'may do more social damage than if the law leaves them alone.' (Ploscowe, *An Action for "Wrongful Life"* (1963) 38 N.Y.U.L.Rev. 1078, 1080.)" (*Stephen K*. v. *Roni L.* (1980) 105 Cal.App.3d 640, 642-643 [164 Cal.Rptr. 618, 31 A.L.R.4th 383].)

We conclude here that any wrong which has occurred as a result of Richard's actions is not one which can be redressed in a tort action. We do not doubt that this lawsuit emanated from an unhappy situation in which the real parties in interest suffered grief. We feel, however, that the innocent children here may suffer significant harm from having their family involved in litigation such as this and that this is exactly the type of lawsuit which, if allowed to proceed, might result in more social damage than will occur if the courts decline to intervene. "We do not believe that the law should provide a basis for such interfamilial warfare." (Ploscowe, *supra,* 38 N.Y.U.L.Rev. at p. 1080.)

Our conclusion is supported by analogy by several other decisions. (See, e.g., *Stephen K*. v. *Roni L., supra,* 105 Cal.App.3d 640 [relief not available to father who became obligated to support an unwanted child after mother falsely represented to him that she was taking birth control pills]; *Perry* v. *Atkinson* (1987) 195 Cal.App.3d 14 [240 Cal.Rptr. 402] [woman could not state cause of action for fraud against married man with whom she had had an intimate relationship based on allegations that she terminated her pregnancy by abortion in reliance upon his false misrepresentations that he would impregnate her the following year either through sexual intercourse or artificial insemination]; *In re Marriage of Buckley, supra,* 133 Cal.App.3d 927 [plaintiff could not maintain fraud suit against his former wife based upon allegations that she falsely represented to him that her former marriage had been legally terminated, thereby fraudulently inducing him to enter into a void marriage]; *Boyd* v. *Boyd* (1964) 228 Cal.App.2d 374 [39 Cal.Rptr. 400] [demurrer sustained to fraud complaint based on allegations that plaintiff lost her Veterans Administration and social security benefits by marrying man who abandoned her two days later and refused to live with her and support her].)

We find the authorities relied upon by real parties in interest unpersuasive. Two cases upon which they heavily rely are clearly distinguishable. In *Barbara A*. v. *John G*. (1983) 145 Cal.App.3d 369 [193 Cal.Rptr. 422], the plaintiff, who suffered an ectopic pregnancy and was forced to undergo

surgery to save her life, was permitted to maintain an action for deceit and battery against her former attorney based upon allegations that she had sexual intercourse with him in reliance upon his knowingly false representation that he was sterile. In *Kathleen K.* v. *Robert B.* (1984) 150 Cal.App.3d 992 [198 Cal.Rptr. 273, 40 A.L.R.4th 1083], the plaintiff, who contracted genital herpes, was permitted to maintain an action for fraud and intentional infliction of emotional distress based upon allegations that she had sexual intercourse with the defendant in reliance upon his deliberate misrepresentation that he was free from venereal disease. Unlike the present case, both of those cases involved *physical injury* to the plaintiff and had no potential for harming innocent children.

The Court of Appeal in *Kathleen K.* stressed the importance of both of these factors in reaching its decision. It observed that the court in *Barbara A.* v. *John G., supra,* 145 Cal.App.3d 369, "distinguished *Stephen K.,* noting that: 'In essence, Stephen was seeking damages for the "wrongful birth" of his child resulting in support obligations and alleged damages for mental suffering. Here, no child is involved; appellant is seeking damages for severe injury to her own body.' [Citation.] We conclude that these same factors distinguish this case from *Stephen K.* and accordingly hold that *Barbara A.* is controlling here." (*Kathleen K.* v. *Robert B., supra,* 150 Cal.App.3d 992, 995.) Responding to the argument that the viability of a cause of action should not depend upon whether the injury alleged is mental or physical, the *Kathleen K.* court noted that "the *Barbara A.* court did not focus solely on the type of injury involved in *Stephen K.,* but upon the fact that Stephen was alleging an injury which had significant public policy overtones: '. . . . [¶] [W]e think it is not sound social policy to allow one parent to sue the other over the wrongful birth of their child. Using the child as the damage element in a tortious claim of one parent against the other could seldom, if ever, result in benefit to a child.' [Citation.]" (*Kathleen K.* v. *Robert B., supra,* 150 Cal.App.3d 992, 995.)

We find Gerald, who did not participate in the conception of the children involved here, in a more sympathetic position than the plaintiff in *Stephen K.* Nevertheless, we conclude that this case which involves no physical injuries to the plaintiffs and the potential for harm to the innocent children is much more like *Stephen K.* than *Barbara A.* or *Kathleen K.*[2] For a man married to the mother of children at the time of their conception to be allowed to bring a tort action such as this against the true father of the children could, as in *Stephen K.,* "seldom, if ever, result in benefit to a

---

[2] Although the plaintiffs here alleged that they suffered "physical distress," the only type of physical distress mentioned in their complaint is nausea. We do not equate this with the type of physical injuries involved in *Barbara A.* and *Kathleen K.*

child." (See *Barbara A.* v. *John G., supra,* 145 Cal.App.3d 369, 379, fn. omitted.)

Furthermore, to allow the imposition of tortious liability in circumstances such as these would frustrate the strong public policy in having natural fathers acknowledge and support their own children. Men in Richard's situation, who are otherwise willing to voluntarily acknowledge and support their children would have a strong disincentive to do so since revealing the truth would expose them to this type of tort action for compensatory and punitive damages. We deem this result undesirable as a matter of public policy.[3]

Let a peremptory writ of mandate issue directing the superior court to vacate its order overruling Richard's demurrer and to enter a new and different order sustaining the demurrer. Upon the request of real parties, the court shall grant them leave to amend the complaint to attempt to plead a claim, not sounding in tort, for reimbursement of out-of-pocket expenditures made to support Richard's children.

Kline, P. J., and Benson, J., concurred.

A petition for a rehearing was denied August 12, 1988, and the opinion and judgment were modified to read as printed above.

---

[3] We do not foreclose the possibility that a man in Gerald's position might be able to recover actual out of pocket costs incurred in supporting another man's children on an equitable theory for reimbursement, such as unjust enrichment. We do not decide that issue as it is not before us. We hold only that Gerald and his mother and stepfather cannot recover compensatory and punitive damages in a tort action under the circumstances presented here.