**Paul S. PICKERING, Plaintiff and Appellant,**

**v.**

**Jody M. PICKERING and Thomas Kimball, Defendants and Appellees.**

**Nos. 16145, 16150.**

Supreme Court of South Dakota.

Considered on Briefs Aug. 30, 1988.

Decided Jan. 11, 1989.

N. Dean Nasser, Jr., Troy Leonard of Nasser Law Offices, P.C., Sioux Falls, for plaintiff and appellant.

Richard D. Casey of Pruitt, Matthews & Muilenburg, Sioux Falls, for defendants and appellees; Patrick Goetzinger, Legal Intern for Pruitt, Matthews & Muilenburg, Sioux Falls, on brief.

WUEST, Chief Justice.

Paul S. Pickering (Paul), brought an action against his estranged wife, Jody M. Pickering (Jody), and her paramour, Thomas Kimball (Tom). Paul's complaint alleged alienation of affections and tortious interference with a marital contract against Tom, fraud and deceit and negligent misrepresentation against Jody, and intentional infliction of emotional distress against both Jody and Tom. The trial court granted summary judgment in favor of Jody and Tom on all causes of action except the cause of action alleging alienation of affections against Tom. From the order of the trial court, Paul appeals. Tom raises by notice of review that part of the trial court's order denying his motion for summary judgment on the cause of action alleging alienation of affections. We affirm.

Paul and Jody were married on February 14, 1981. Sometime thereafter, Jody became acquainted with Tom at work and the two developed a platonic relationship.

In January, 1984, Jody and Tom travelled together to Tampa, Florida. Jody desired to go to Tampa to visit a friend, but wanted a travelling companion with whom she could share the expenses of the trip. Since Tom previously resided in Tampa, Jody asked him if he would be interested in accompanying her. The two spent very little time together in Florida.

During and after the trip, Tom perceived that Jody was unhappy. He approached this topic with her by asking if she was "ninety-nine percent happy with her life." Jody responded that she wasn't even ninety percent happy and indicated that romance was no longer present in her marriage. Although Jody expressed that she loved Paul, she felt that her affection for him was not as strong as it previously had been.

In late February, 1984, Tom mentioned to Jody that he had written a song about their trip to Florida and invited her to his apartment to hear it. Jody and Tom arranged to go to Tom's apartment after work. After they arrived at the apartment, the two sat on the floor together and began kissing, which ultimately led to sexual intercourse. Thereafter, their sexual liaisons continued for several months until Jody broke off the relationship because of her feelings of guilt.

Tom and Jody subsequently resumed and discontinued their relationship several times. Although Jody usually broke off relations with Tom out of her overwhelming sense of guilt, she always initiated the resumption of their relationship because of her deep affection for Tom and her desire to be with him.

Jody again broke off her relationship with Tom in January, 1985. Shortly thereafter, she discovered that she was pregnant. She was certain that Tom was the father of the child she was carrying because sexual relations between her and Paul had been infrequent. After Jody learned she was pregnant, she seduced Paul and had sexual intercourse with him. Jody wanted Paul to believe he was the child's father. She also desired to avoid hurting Paul and to preserve their marriage. Several weeks later, Jody indicated to Paul that she was experiencing symptoms of pregnancy. A home pregnancy test confirmed these "suspicions." Paul was surprised by the test results, but he was nonetheless pleased by them. In fact, he was so ecstatic about Jody's being pregnant that he "shouted it to the world."

Two months after the advent of her pregnancy, Jody again resumed her sexual relationship with Tom and continued it until two weeks prior to the birth of her daughter. During this time, Tom was under the impression that Jody was pregnant with Paul's child.

Jody gave birth to a daughter on September 15, 1985. She and Tom continued to see each other, but they did not resume their sexual relationship until nearly two months had passed. Although Jody maintained her silence about the child's paternity following its birth, it was during this period of time that Tom noticed a family trait in the baby's toes. He then confronted Jody about the paternity of the child and she admitted that Paul was not the father and that he was.

Upon learning this, Tom insisted that he be responsible for raising the child and that Paul be immediately notified of the child's true paternity. Jody hesitated to tell Paul that he was not the child's father because she did not want to hurt him, but she finally disclosed this fact to him on January 21, 1986. Subsequent paternity testing confirmed that Tom was the father of the child.

Paul and Jody attempted to reconcile their marriage and visited a marriage counselor. This attempt, however, was unsuccessful and Jody and the baby moved into a separate apartment.

On July 29, 1986, Paul commenced a suit for divorce against Jody and the present action against Jody and Tom alleging intentional infliction of emotional distress, fraud and deceit, negligent misrepresentation, tortious interference with a marital contract, and alienation of affections. Motions for summary judgment were submitted by defendants and plaintiff on May 1, 1987, and May 15, 1987, respectively. After a hearing, the trial court granted summary judgment in favor of Jody on all causes of action and in favor of Tom on all causes of action except alienation of affections. Paul's motion for summary judgment was denied. It is from these orders that Paul and Tom now appeal.

In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc. v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118, 120 (S.D.1985); *Ruple*

*v. Weinaug,* 328 N.W.2d 857, 859–60 (S.D. 1983).

■ We first address the trial court's granting summary judgment in favor of Jody and Tom on the cause of action alleging intentional infliction of emotional distress. We believe the tort of intentional infliction of emotional distress should be unavailable as a matter of public policy when it is predicated on conduct which leads to the dissolution of a marriage. *See Richard P. v. Superior Court (Gerald B.),* 202 Cal.App.3d 1089, 249 Cal.Rptr. 246 (1 Dist.1988); *Haldane v. Bogy,* 208 Cal. App.2d 302, 25 Cal.Rptr 392 (2 Dist.1962); *Van Meter v. Van Meter,* 328 N.W.2d 497 (Iowa 1983) (McCormick, J., dissenting); *Hafner v. Hafner,* 135 N.J.Super. 328, 343 A.2d 166 (Law Div.1975); *Artache v. Goldin,* 133 A.D.2d 596, 519 N.Y.S.2d 702 (2 Dept.1987); *Baron v. Jeffer,* 98 A.D.2d 803, 469 N.Y.S.2d 815 (2 Dept.1983); *Weicker v. Weicker,* 22 N.Y.2d 8, 290 N.Y.S.2d 732, 237 N.E.2d 876 (1968). Furthermore, the law of this state already provides a remedy for this type of claim in the form of an action against the paramour for alienation of affections.

■ We next examine Paul's allegation of fraud and deceit against Jody. Paul contends that Jody intentionally kept him "in the dark regarding the illicit affair and the true paternity of the child" and caused him to "profess to his friends, family, and his church" that he was the child's natural father. As a result of these declarations, Paul suffered "untold humiliation, embarrassment, and emotional scarring."[1]

We need not determine whether Paul has established a prima facie case on this tort because we conclude that his action for fraud and deceit also should be barred as a matter of public policy. Although we agree with Paul that his allegations normally would suffice to state a cause of action for fraud,[2] we believe the subject matter of this action is not one in which it is appropriate for the courts to intervene.

The exact issue that now confronts us was addressed by the California Court of Appeal in *Richard P. v. Superior Court (Gerald B.),* 202 Cal.App.3d 1089, 249 Cal. Rptr. 246 (1 Dist.1988). The court barred the action on the basis of public policy, stating:

> Broadly speaking, the word "tort," means a civil wrong, other than a breach of contract, for which the law will provide a remedy in the form of an action for damages. It does not lie within the power of any judicial system, however, to remedy all human wrongs. There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of feelings of others are beyond any effective legal remedy and any practical administration of the law. To attempt to correct such wrongs or give relief from their effects "may do more damage than if the law leaves them alone."

*Id.* 249 Cal.Rptr. at 249 (*quoting Stephen K. v. Roni L.,* 105 Cal.App.3d 640, 642–43, 164 Cal.Rptr. 618, 619 (2 Dist.1980)) (citations omitted). The court continued:

> We conclude here that any wrong which has occurred as a result of [the defendant's] actions is not one that can be redressed in a tort action. We do not doubt that this lawsuit emanated from an unhappy situation in which the real parties in interest suffered grief. We feel, however, that the innocent children here may suffer significant harm from having their family involved in litigation such as this and that this is exactly the

---

1. In his complaint, Paul also sought recovery of maternity and child care expenses incurred by him. The trial court granted Paul's motion for summary judgment as to these expenses and allowed him to recover from Jody and Tom $2893.85 plus interest amounting to $650. None of the parties appeal this portion of the trial court's judgment.

2. The essential elements required to sustain an action for fraud include (1) a false representation made as a statement of fact; (2) knowledge (or recklessness) by the party making the representation that it is untrue; (3) an intention that the representation should induce the other party to act; and (4) reliance on the representation to the detriment of the innocent party. *Sperry Corp. v. Schaeffer,* 394 N.W.2d 727, 730 (S.D. 1986).

type of lawsuit which, if allowed to proceed, might result in more social damage than will occur if the courts decline to intervene. "We do not believe that the law should provide a basis for such interfamilial warfare."

*Richard P.,* 249 Cal.Rptr at 249 (citation omitted).

We find the reasoning of the court in *Richard P.* persuasive. Allowing Paul to maintain this cause of action may cause Jody's and Tom's daughter to suffer significant harm. This innocent party, who is now three years old, should not be subjected to this type of "interfamilial warfare." We are not unsympathetic for Paul because of the embarrassment and humiliation he suffered. Any attempts to redress. this wrong, however, may do more social damage than if the law leaves it alone. We hold that the fraud and deceit alleged by Paul is not actionable because public policy would not be served by authorizing the recovery of damages under the circumstances of the present case. Summary judgment in favor of Jody, therefore, was appropriate.

■ In his third cause of action, Paul contends that Jody negligently misrepresented to him that he was the child's father. Paul, however, mistakenly sets forth a cause of action that is inapplicable to the facts of the present case. The tort of negligent misrepresentation occurs when in the course of a *business* or any other transaction in which an individual has a *pecuniary* interest, he or she supplies false information for the guidance of others in their *business* transactions, without exercising reasonable care in obtaining or communicating the information. Restatement (Second) of Torts § 552 (1977). *See also Moore v. Kluthe & Lane Ins. Agency,* 89 S.D. 419, 234 N.W.2d 260 (1975). Because Paul's complaint did not arise from a commercial or business setting and because no pecuniary injury was suffered, summary judgment was properly entered in favor of Jody.

■ The fourth cause of action we address is characterized by Paul as tortious interference with a marital contract which he asserts against Tom. In his brief, Paul invokes an analogy to an action for intentional interference with the performance of a contract in a commercial setting. We believe that the cause expressed is more accurately characterized as one for alienation of affections, a claim with which we deal later, and hold that the trial court did not err in granting summary judgment in favor of Tom on this issue.

We find no South Dakota case that has held the tort of intentional interference with a contract to be available as a cause of action in situations arising out of a marital relationship and further note that other courts have also refused to recognize this cause of action in similar settings. *See Howton v. Avery,* 511 So.2d 173 (Ala.1987); *Norris v. Moskin Stores, Inc.,* 272 Ala. 174, 132 So.2d 321 (1961); *Arnac v. Wright,* 163 Ga.App. 33, 292 S.E.2d 440 (1982); *Kunau v. Pillers, Pillers & Pillers, P.C.,* 404 N.W.2d 573 (Iowa App.1987). Those courts held the actions alleging tortious interference with a marital contract were really actions for alienation of affections, a tort which had been abolished in their respective jurisdictions. The courts refused to allow these attempts to circumvent the judicially or legislatively abolished causes of action by disguising the suits as other types of torts. Although this state has not abolished the tort of alienation of affections, we also decline plaintiff's invitation to acknowledge this inventive cause of action. We see no reason to recognize an essentially repackaged cause of action that already has been specifically pleaded.

Paul's final cause of action which he asserts against Tom is alienation of affections. Unlike the other causes of action brought by Paul, this one presents genuine issues of material fact that are appropriate for trial. Tom's motion for summary judgment on this issue, therefore, was properly denied.

■ This court has previously set forth the following elements necessary to sustain a claim for alienation of affections: "(1) wrongful conduct of the defendant; (2) loss of affection or consortium; and (3) a causal

connection between such conduct and loss." *Pankratz v. Miller*, 401 N.W.2d 543, 546 (S.D.1987); *Hunt v. Hunt*, 309 N.W.2d 818, 820 (S.D.1981). In *Pankratz*, we stated:

> Consortium is a right growing out of the marital relationship. This term includes the right of either spouse to the society, companionship, conjugal affections, and assistance of the other. A loss or impairment of any such elements will sustain an action for alienation of affections. However, if it appears there was no affection to alienate, recovery is precluded.

*Pankratz*, 401 N.W.2d at 546 (citations omitted). Since an action for alienation of affections is based on an intentional tort, the defendant's actions must have been calculated from the outset to entice the affections of one spouse away from the other. *Id.* at 548–49. It is not enough that the defendant should have known that continuing the affair might contribute to the diminution of a spouse's affections, where that spouse's affections for the other were alienated before the affair began. *Id.* at 548.

■ In the present case, a genuine issue of material fact exists as to whether Tom acted purposefully to entice Jody's affections away from Paul. Whether Jody held any affection for Paul prior to the start of her relationship with Tom is also an issue of material fact. Because these factual issues are best determined by a jury, summary judgment on this cause of action was properly denied.

Paul also contends that the trial court dismissed his causes of action on the basis of spousal immunity from tort liability. We note that the doctrine of interspousal immunity in tort actions has been abolished in South Dakota. *See Aus v. Carper*, 82 S.D. 568, 151 N.W.2d 611 (1967); *Scotvold v. Scotvold*, 68 S.D. 53, 298 N.W. 266 (1941). Because Paul's assertion is not supported by the record, we find it totally lacking merit.

The order of the trial court granting summary judgment in favor of Jody and Tom on all causes of action except alienation of affections is affirmed.

MORGAN, J., concurs.

HENDERSON, SABERS and MILLER, JJ., concur in part and dissent in part.

HENDERSON, Justice (concurring in part, dissenting in part).

First, I concur in the majority opinion's expression, as buttressed by decisional law in this state, that the doctrine of interspousal immunity in tort actions has been abolished in this state. Therefore, each tort must be individually assessed as to its merit. *Aus v. Carper*, 82 S.D. 568, 151 N.W.2d 611 (1967). In this case, Solomon, in his finest hour, would have difficulty in assessing the propriety of the cause of actions pleaded. Here, we have a love triangle which was formed in Sioux Falls, our largest city. Social disorder and pregnancy ensued. Grief and sorrow spew into the courts. Now, lacking the wisdom of Solomon, we must adjudicate to determine a just result.

Secondly, it appears that this is a second tort action in which this particular lawyer has shotgunned a pleading with multiple causes of action, some of which are in total conflict with one another in theory, and both within the same appellate time frame. *French v. Dell Rapids Hosp.*, 432 N.W.2d 285 (S.D.1988).

Third, the cause of action for alienation of affections is alive in South Dakota per the special concurrence in *Hunt v. Hunt*, 309 N.W.2d 818, 822 (S.D.1981). As the writer of said decision, which was joined in by then Chief Justice Roger Wollman, I would have abolished the alienation of affections action in this state which is of common-law origin and exists independent of any statute. *Hunt*, 309 N.W.2d at 820. Criminal conversation, per *Hunt*, was abolished in this state as a tort. We noted in *Hunt* that adultery in South Dakota was statutorily decriminalized. It would appear that the creativity of the pleader in this case, on behalf of plaintiff, seeks to perhaps skirt the holding in *Hunt*, insofar as the criminal conversation tort abolition is concerned.

Fourth, I concur, and for the reasons stated by the majority opinion in its holdings, on tortious interference and fraud and deceit.

Fifth, on alienation of affections, for all of the reasons set forth in my writing in *Hunt,* I respectfully dissent to the majority writing.

This leaves, so far as this Justice is concerned, one available tort action for the plaintiff-appellant to pursue, and that is the tort of intentional infliction of emotional distress. Under my theory, there would be no duality of recovery or overlapping of damages if this case were tried strictly upon intentional infliction of emotional distress. However, I would restrict a survival of action in Paul (husband) against Kimball (lover); thereby, I adopt the public policy arguments insofar as these arguments apply regarding Paul (husband) suing Jody (wife). Hence, I would hold that Paul could sue, under this tort theory, Kimball (lover) who is not within the family. In my opinion, where man and wife are involved in a marriage relationship, there could always exist a tort for intentional infliction of emotional distress where they had an argument. It could be over the family dog, who takes out the garbage, who forgot to pay the bill, or who is spending too much money. In other words, the law should not provide a basis for interfamilial warfare between husbands and wives where our courts would be flooded with litigation. Kimball (lover) was not the husband of Jody. He was the interloper. I am satisfied that a showing has been made that the conduct appears to be outrageous and with an intent to inflict severe emotional distress; furthermore, that it was the intention of the acts to perpetrate and cause great injury upon plaintiff. From these actions, an extreme emotional response was born in the mind and body of plaintiff-appellant. Surely, it is a question of fact under the guidelines of *Wilson v. Great N.*

*Ry. Co.,* 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968).

Therefore, I respectfully concur in part and dissent in part.

SABERS, Justice (concurring in part and dissenting in part).

I concur with the majority opinion except as to the dismissal of Paul's causes of action against Jody for fraud and intentional infliction of emotional distress.

The trial court determined that there were no genuine issues of material fact to be decided against Jody and granted her motion for summary judgment on all causes of action. Obviously, there are genuine issues of material fact concerning intentional infliction of emotional distress and fraud and deceit. Therefore, the trial court erred and the majority affirms that error. *Bego v. Gordon,* 407 N.W.2d 801 (S.D.1987); *Trapp v. Madera Pacific Inc.,* 390 N.W.2d 558 (S.D.1986); *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19 (1968).

After becoming pregnant with Tom's child, Jody seduced Paul and convinced him that he was the father of her unborn child. This led to Paul's public humiliation and embarrassment and clearly raised sufficient jury questions as to fraud and deceit and intentional infliction of emotional distress. This is not seriously disputed in the majority opinion. Despite this, the majority opinion states:

> We are not unsympathetic for Paul because of the embarrassment and humiliation he suffered. Any attempts to redress this wrong, however, may do more social damage than if the law leaves it alone. We hold that the fraud and deceit alleged by Paul is not actionable because public policy would not be served by authorizing the recovery of damages under the circumstances of the present case. Summary judgment in favor of Jody, therefore, was appropriate.*

* The majority opinion attempts to use the same "public policy" rationale to affirm the denial of Paul's cause of action against Jody for intentional infliction of emotional distress. In doing so, it makes two errors. First, it mistakenly relies on the case of *Richard P. v. Superior Court (Gerald B.),* 202 Cal.App.3d 1089, 249 Cal.Rptr. 246 (1 Dist.1988) which is clearly distinguishable. Secondly, the majority opinion states:

It is not necessary for the majority opinion to "authorize the recovery of damages" under these circumstances. The legislature already performed that task by enacting SDCL 20–10–1 (liability for damage caused by deceit) and SDCL 20–10–2 (acts constituting deceit). Neither statute prohibits a person from recovering damages for deceit from either a spouse or an ex-spouse. In view of the statute permitting recovery and the absence of any statutory prohibition, how can the majority deny recovery on an unexpressed public policy? If recovery is denied, what is the beginning and what is the end of the policy or rule? The majority is clearly overstepping its bounds and usurping for itself the rightful power and tasks of the legislature.

In this context, it is interesting to note that the trial court granted Paul recovery against Tom for medical costs and expenses in the amount of $2,893.85, plus interest of $650.00, and granted Tom indemnity against Jody for one-half of that amount. Although neither Tom nor Jody appealed from that judgment, it is interesting to note that the majority's concern over "interfamilial warfare" was not sufficient to prevent that recovery also and the indemnity based thereon.

MILLER, J., joins in this special writing and I am authorized to so state.

Furthermore, the law of this state already provides a remedy for this type of claim in the form of an action against the paramour for alienation of affections.
Obviously, this quoted language has no bearing on Paul's claim against Jody.