**In re the MARRIAGE OF Donald R. SMITH, Petitioner–Appellee,**

and

**Loretta Ruth Smith, Respondent,**

and Concerning

**Charles Ames, Third–Party Respondent–Appellant.**

No. 97CA2202.

Colorado Court of Appeals, Div. V.

Oct. 28, 1999.

As Modified on Denial of Rehearing Feb. 3, 2000.*

Certiorari Denied Aug. 7, 2000.**

---

* Rothenberg, J., would grant.

** Justice KOURLIS would grant as to the following issues:

Whether the court of appeals erred in deciding that the trial court could order the father to pay child supportt prior to the date thet theactiob for child support was filed.

Whether the court of appeals erred in deciding that the father had a duty to pay child support to the time that he had knowledge of the fact that he was the father.

Whether the court of appeals erred in deciding that the husband was not estopped from claiming reimbursement of child support from the father by the husband's standing as father of the children, and receiving the benefits of fatherhood.

Whether the husband's action for reimbursement is barred by the statute of limitations.

Whether the court of appeals erred in deciding that the trial court could base the amount of reimbursement of child support to the husband from the father on the support guidelines contained in C.R.S. § 14-109-115(10), without consideration of the relevant factors stated in C.R.S. § 19-4-116(6).

Whether the trial court erred in awarding attorney fees to the husband against the father, and the costs of husbands's genetic tests.

Drummond, Dougherty & Schwartz, P.C., Donald G. Drummond, Larry C. Schwartz, Pueblo, Colorado, for Appellee.

No Appearance for Respondent.

Law Offices of J.E. Losavio, J.E. Losavio, Jr., Pueblo, Colorado, for Third–Party Respondent–Appellant.

Opinion by Judge TAUBMAN.

In this action for retroactive payment of child support, third-party respondent, Charles Ames (father), appeals the order of the trial court awarding money damages to Donald Robert Smith (husband) as reimbursement for his past support of the children of father and Loretta Ruth Smith (wife). We affirm.

This third-party proceeding arose under the Uniform Parentage Act (UPA), § 19–4–101, et seq., C.R.S.1999, in connection with the dissolution of the marriage of husband and wife. Husband petitioned the court for a declaration as to his paternity of the three minor children born during the marriage. As grounds, husband claimed to be the children's natural father, but averred that wife had informed him that all three of the children were fathered by another man. Thereafter, wife named respondent as the putative father and requested that he be joined as a party. The court granted the wife's request.

Shortly after wife filed her motion to join father, husband filed a motion seeking reimbursement of past child support from the father or any other individual ultimately determined to be the children's biological father. Husband sought to be reimbursed for child support in an amount equal to his contributions toward the cost of raising the children since their birth. Husband's motion remained pending while the parties and the

children received genetic testing. The test results established the biological paternity of father.

The trial court then considered the merits of husband's motion for reimbursement and determined that he could recover the support he had previously provided to father's children. After an evidentiary hearing, the court entered an additional order finding that husband's claim of reimbursement was timely under the general two-year statute of limitations set forth in § 13–80–102(1)(i), C.R.S. 1999, and that he was entitled to receive an award for $19,929.40 as damages. That amount was determined based on application of the child support guidelines and husband's testimony concerning his actual expenses in raising the children. The court also awarded attorney fees to husband in the amount of $3,436, as well as his costs for the genetic testing.

### I. Statute of Limitations

In challenging the court's rulings, father first contends that husband failed to file his claim within the two-year limitations period provided by § 13–80–102(1)(i). We conclude that husband's claim was timely.

■ Father maintains that husband's claim is subject to the general two-year limitations provision which applies to actions not governed by a specific limitations period. Inasmuch as the parties have not raised the applicability of any other statutes of limitations, such as those provided in the UPA, we consider only whether husband's action survives the application of the two-year limitations provisions. *See D'Amico v. Smith*, 42 Colo.App. 369, 600 P.2d 84 (1979) (application of a statute of limitations that is not pled is waived).

The commencement of the statutory period for filing the claim at issue here depends upon when the action accrued pursuant to § 13–80–108(8), C.R.S.1999, which provides that:

A cause of action for losses or damages not otherwise enumerated in this article shall be deemed to accrue when the injury, loss, damage, or conduct giving rise to the cause of action is discovered or should have been discovered by the exercise of reasonable diligence.

■ The rule of discovery, as this test is generally known, involves an inquiry into when the party bringing the action acquired knowledge of or should have reasonably discovered the essential facts, rather than the applicable legal theory. *See Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993); *Winkler v. Rocky Mountain Conference of United Methodist Church*, 923 P.2d 152 (Colo.App. 1995).

■ Only when the evidence clearly shows that a party's discovery of the pertinent facts occurred or should have occurred upon a particular date can the issue be decided as a matter of law. *Gavend v. Malman*, 946 P.2d 558 (Colo.App.1997). Otherwise, such issue presents a question of fact. *Winkler v. Rocky Mountain Conference of United Methodist Church, supra.*

■ Here, the court found that wife had informed husband he was not the natural father of the children in October 1993 and that, prior to that time, he believed he was their biological father and had no reason to think otherwise. The court also found that husband initially attributed wife's claim to her anger concerning the dissolution of marriage. The testimony in the record supports these findings.

Further, it is undisputed that husband did not know of father's identity until wife named him in her motion to join father as a third party. The trial court relied upon that fact to determine that husband's cause of action did not accrue until that motion was filed in April 1994.

Although father contends that husband did not bring this action until he submitted his trial brief on July 22, 1997, the record shows that his initial motion requesting reimbursement of paid child support was filed on May 3, 1994, well within the asserted two-year period. Therefore, we conclude that the trial court properly determined that husband's claim was not barred under the general two-year statute of limitations.

## II. Retroactive Child Support

■ Father next contends that the UPA does not permit the collection of child support retroactively. We disagree.

Although proceedings to establish and enforce child support obligations operate only prospectively under the Uniform Dissolution of Marriage Act, § 14–10–101, et seq., C.R.S. 1999, the UPA vests authority and jurisdiction in the trial court to permit the recovery of past child support. *In re Custody of Garcia*, 695 P.2d 774 (Colo.App.1984). *See also People in Interest of L.W.*, 756 P.2d 392 (Colo.App.1988)(the question of child support in a paternity proceeding involves both past and future support).

As § 19–4–116(3)(a), C.R.S.1999, provides, a judgment or order determining paternity "may contain any other provision directed against the appropriate party to the proceeding concerning the duty of support, the recovery of child support debt pursuant to section 14–14–104 ... or any other matter in the best interest of the child." Section 19–4–116(4), C.R.S.1999, further provides, in pertinent part:

> The court ... may enter an order directing the father to pay for support of the child, in an amount as may be determined by the court ... to be reasonable under the circumstances, *for a time period which occurred prior to the entry of the order establishing paternity.* The court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just. (emphasis added)

■ Father argues that the reference in § 19–4–116(3) to § 14–14–104, C.R.S.1999, which concerns child support debt based upon prior payments of public assistance, restricts the right to obtain reimbursement for past child support to county departments of social services. We are not so persuaded.

Statutes must be given effect according to their plain and ordinary meaning. *People in Interest of R.T.L.*, 780 P.2d 508 (Colo.1989).

No reference to § 14–14–104 appears in § 19–4–116(4), and that provision does not contain any language that limits the right of reimbursement to governmental entities. In fact, the supreme court has recognized that the right to obtain past support may be asserted by the mother of the child. *See People in Interest of A.A.T*, 191 Colo. 494, 554 P.2d 302 (1976). Moreover, this court has previously determined that the discretion to reduce a father's liability applies only to the reimbursement of past support provided by a child's custodian and not to an award under § 14–14–104, which, pursuant to the dictates of the version of that statute, as it existed before 1993, could equal or exceed the amount of public assistance paid. *See People in Interest of A.A.V.*, 815 P.2d 997 (Colo.App.1991). Consequently, the interpretation urged by father would render superfluous the specific power granted the court in § 19–4–116(4) to limit a father's liability for past support.

Also, a plain reading of the clauses of § 19–4–116, C.R.S.1999 quoted above indicates that the statute was intended to give trial courts broad discretion in enforcing it. These clauses vest the trial court with broad discretion concerning the establishment of liability for and the amount of retroactive child support.

Our conclusion that a father may be required to pay child support retroactive to the birth of the child under the UPA is consistent with the result reached by courts in other jurisdictions.

Interpreting the Wyoming equivalent of § 19–4–116(3)(a), the Wyoming Supreme Court held in *Ellison v. Walter ex rel. Walter*, 834 P.2d 680 (Wyo.1992) that a trial court possesses the authority to issue support orders retroactive to the date of a child's birth in paternity/support actions initiated by a state social services agency for the reimbursement of public assistance. The *Ellison* court also determined that retroactive child support orders should be the rule, rather than the exception. Nothing in the analysis by the *Ellison* court limits its holding to circumstances in which a state is seeking reimbursement of public assistance.

The *Ellison* court reasoned that, because the Wyoming statute allowed a trial court to "reach back to expenses incurred during the mother's pregnancy and confinement," it fol-

lowed logically that a trial court should have the authority to provide for expenses incurred to support a child who resulted from the pregnancy. *Ellison v. Walter ex rel. Walter, supra*, 834 P.2d at 684.

Here, § 19–4–116(3)(a) contains identical language concerning the payment for the mother's "pregnancy and confinement," and thus, we agree with the *Ellison* court's reasoning. *See also J.A.W. v. D.M.E.*, 591 A.2d 844 (D.C.App.1991) (allowing award of retroactive child support to mother); *Mason v. Reiter*, 564 So.2d 142 (Fla.App.1990) (no abuse of discretion to order retroactive support to mother, even where mother did not request such support); *Weaver v. Chester*, 195 Ga.App. 471, 393 S.E.2d 715 (1990) (father liable to mother for child support for period prior to paternity adjudication, during which time mother had supported child without the benefit of public assistance); *State ex rel. Coleman v. Clay*, 805 S.W.2d 752 (Tenn. 1991) (under statute similar to § 19–4–116(3)(a), juvenile court had discretion to order retroactive support back to date of child's birth).

Other courts have similarly held that a father may have a duty to reimburse a stepparent who provides support for a child during the period in which paternity has not been established.

In *Mougey v. Salzwedel*, 401 N.W.2d 509 (N.D.1987), in a situation factually similar to the one before us, the court held that the stepfather had a cause of action against the natural father for reimbursement for support. *See also Richard P. v. Superior Court*, 202 Cal.App.3d 1089, 249 Cal.Rptr. 246 (1988) (allowing cause of action for reimbursement of out-of-pocket expenses by stepfather where stepfather believed that he was natural father of children).

In *Anonymous Wife v. Anonymous Husband*, 153 Ariz. 573, 739 P.2d 794 (1987), the court held that the biological father had an obligation to support the child even where the husband was aware that the child was not his, but nonetheless elected to support the child. The court reasoned that the law implies a promise by the irresponsible parent to reimburse those who provide support for the child. *See also Stat v. Porter*, 314 A.2d

172 (Del.1973) (allowing stepfather a cause of action for reimbursement against natural father where stepfather was aware that children were not his biological children). *But cf. Drescher v. Morgan*, 251 S.W.2d 173 (Tex. Civ.App.1952) (stepfather not entitled to reimbursement from biological father where stepfather knew he was not biological father and elected to support child).

■ To the extent that father argues that husband was the presumed father of the children, and thus should not be entitled to reimbursement for past child support, father did not raise that argument until his reply brief in this appeal. Therefore, such argument is not properly before this court, and we do not address it. *See People v. Czemerynski*, 786 P.2d 1100 (Colo.1990) (issue not properly before the court where defendant did not raise the argument at trial or in the opening brief, but raised it for the first time only in the reply brief).

■ We thus conclude that an action for reimbursement of child support expenses incurred by husband from the dates of each child's birth may be brought by husband under the UPA.

### III. Due Process

Father additionally contends that requiring him to pay retroactive child support deprives him of due process because he lacked notice of his paternity prior to his joinder in these proceedings. We also reject this contention.

Because father's argument appears to be predicated upon both procedural and substantive due process, we address both contentions.

■ Procedural due process involves the manner in which state action occurs and requires notice and an opportunity for a hearing. *People v. Garlotte*, 958 P.2d 469 (Colo.App.1997). Substantive due process, in turn, prohibits the government from engaging in conduct which is arbitrary, capricious, or irrational, regardless of the procedures used to implement it. *Sundheim v. Board of County Commissioners*, 904 P.2d 1337 (Colo. App.1995).

■ Father's procedural due process argument is predicated on his contention that, because he lacked notice of his paternity prior to the commencement of these proceedings, he lacked notice and an opportunity to be heard for purposes of procedural due process. In making such argument, however, father confuses the element of "notice" contained in the requirements for procedural due process with his alleged lack of notice of paternity. The requirement of notice under the test for procedural due process is that of being provided with actual knowledge that a governmental entity or official intends to take some action against an individual or entity to terminate or limit a property or liberty interest.

Here, father concedes that he was provided with notice of these proceedings and, within these proceedings, afforded an opportunity to dispute husband's contention that he could be ordered to pay retroactive child support. Accordingly, there is no basis for father's procedural due process argument.

■ Rather, father's argument is more properly characterized as a substantive due process contention that he was deprived of fundamental fairness by the court's imposition of liability on him for retroactive child support before he was aware that he was the biological father of the children.

■ For government action to violate substantive due process, it must be arbitrary, capricious, or irrational such that no articulated basis for the decision bears any rational relationship to a legitimate governmental interest. *See Sundheim v. Board of County Commissioners, supra.* Such is not the case here.

In considering a constitutional challenge to the statutory predecessor to § 19–4–116, the supreme court, in *People in Interest of S.P.B.*, 651 P.2d 1213, 1217 (Colo.1982), articulated the governmental interests in obtaining child support from parents pursuant to the Uniform Parentage Act, stating that:

The statutory presumption of a shared parental obligation of child support protects three critical interests: the interest of the child in receiving adequate support, the interest of the state in ensuring that children not become its wards, and the interest of the parents in being free from governmental intrusion into the intimate sphere of family life.

*See Abrams v. Connolly*, 781 P.2d 651 (Colo. 1989) (child has legal right to support from both parents, and both parents have a continuing duty to provide reasonable support until child's emancipation).

In light of these governmental interests, it cannot be said that the application of § 19–4–116 to father violated his right to substantive due process.

## IV. Equitable Estoppel

■ We also reject father's argument that the doctrine of equitable estoppel precludes husband from bringing his claim for reimbursement.

■ The party asserting an estoppel claim must demonstrate that he or she reasonably relied to his or her detriment upon the acts or representations of the other person and that he or she had no knowledge or convenient means of knowing the facts. *In re Marriage of Dennin*, 811 P.2d 449 (Colo. App.1991). Ordinarily, the doctrine will be applied only in certain limited circumstances such as uncompleted adoption proceedings. *In re Marriage of Barone*, 895 P.2d 1075 (Colo.App.1994).

Here, despite father's claim that husband knew his paternity of the eldest child was questionable prior to marrying wife, husband testified to the contrary. Further, father claimed no reasonable reliance other than his ignorance. Nothing in the record indicates that husband affirmatively led father to believe he was relieved of any duty to support the children. Consequently, we conclude the trial court properly determined that husband was not equitably estopped from seeking reimbursement of his child support expenses. *See Mougey v. Salzwedel, supra* (estoppel not applicable in situation where stepfather seeks reimbursement for support from natural father because stepfather was unaware that child was not his biological child).

## V. Application of Child Support Guidelines

█ Finally, father asserts that the trial court erred in determining the amount of damages by basing its decision on the child support guidelines set forth in § 14–10–115, C.R.S.1999, and on husband's testimony. Again, we disagree.

█ A party cannot recover damages which are uncertain or speculative. *Nelson v. Lake Canal Co.*, 644 P.2d 55 (Colo.App. 1981). However, a party need not prove damages with mathematical certainty. A monetary award of damages may be based upon evidence which is sufficient to allow the trier of fact to determine an amount which will adequately compensate a party. *See Great West Food Packers, Inc. v. Longmont Foods Co.*, 636 P.2d 1331 (Colo.App.1981).

Here, the trial court concluded that the fact of damages was certain. There was no dispute that husband and mother had supported the children from their birth through November 1993, and it was also not disputed that father had not supported the children during this period.

Accordingly, husband sought to be reimbursed for his actual expenses in raising the three children. In support of his claim for damages, he presented evidence, through an expert, of his income and that of his wife during the relevant period. His expert used this information to determine the amount of child support for which husband would have been liable pursuant to the child support guidelines had he been required to pay child support. Also, husband testified about the cost of raising the children during the relevant period.

The trial court concluded that both the child support guidelines and husband's testimony regarding the cost of raising the children were reasonable bases for estimating the amount of damages here. Accordingly, after concluding that husband had contributed approximately fifty percent of the cost of raising the children, the trial court averaged the amounts derived from the child support guidelines and from husband's testimony and concluded that the amount of damages to be awarded to husband was $19,929.

We agree that use of the child support guidelines was an appropriate method to determine a reasonable amount of husband's damages. *See* §§ 19–4–129 and 19–4–116(6)(k), C.R.S.1999 (child support guidelines apply to child support obligations established or modified in proceedings under the UPA). We also agree with the trial court that husband's testimony and documentary proof as to his and wife's respective incomes and expenses were adequate evidence to support the trial court's calculation of damages.

Finally, we note that, although § 19–4–116(4) provides that "the court may limit the father's liability for past support of the child to the proportion of the expenses already incurred that the court deems just," father does not argue on the basis of this statute or a disparity in income of the parties that he should have been liable for a lesser amount of damages. *See e.g., J.A.W. v. D.M.E., supra* (father not required to reimburse mother for unreasonable expenses such as birthday party with 65 guests, or trip to Disneyland).

Moreover, to the extent that father contends that the amount of damages should have been lower based upon the doctrine of equitable estoppel, we have concluded that the trial court properly rejected such argument. To the extent that father relies upon the doctrine of unjust enrichment for his contention, the trial court rejected his contention and father does not raise this issue on appeal.

The order is affirmed.

Judge ROY concurs.

Judge ROTHENBERG concurs in part and dissents in part.

Judge ROTHENBERG concurring in part and dissenting in part.

I agree with the majority's conclusion that § 19–4–116(4), C.R.S.1999, authorizes a trial court to direct a child's father to reimburse another for past support of the father's children, and that it is within the court's discretion to determine the amount of that support. This is based upon the longstanding principle that parents have a duty to support their children.

However, because I conclude that the trial court's ruling was based on an incorrect premise, I would reverse the judgment and remand for another hearing on the reimbursement issue. That premise—posited by Donald R. Smith at trial, in this appeal, and accepted by the trial court in its order—was that Smith himself owed no duty of support to the children.

Smith does not dispute that he was legally married to the mother when all three children were born, and therefore, was their presumed father. See § 19–4–105(1)(a), C.R.S.1999. It is also undisputed that he was listed as the father on the children's birth certificates; he acted *in loco parentis* to them during the marriage; he exercised all the rights, duties, and obligations of a father; and because the children viewed him as their father, he was a psychological parent and the nurturing male figure in the children's lives.

Thus, Smith was in all respects a parent to the children until the court declared him otherwise. He had a legal right to their income, if any such existed, and to compensation in the event that they were injured by a tortfeasor. As the presumed father, he also had a legal duty to support and nurture them.

Nevertheless, Smith maintains that once Charles Ames' paternity was established by scientific testing and that Ames was declared to be the biological father by the court, Smith's previous status as the presumed father—with all of its attendant rights and obligations—vanished retroactively. Not only does Smith assert that his duty to support the children became void *ab initio*, he also contends he is entitled to his money back, that is, reimbursement from Ames for all of Smith's expenditures for the children from birth. This issue has major ramifications for Colorado's children, and I respectfully disagree that it should be resolved in this manner.

The Uniform Parentage Act, § 19–4–101, et seq., C.R.S.1999 (UPA) and Colorado public policy accord a strong presumption of legitimacy to children born in wedlock. In fact, the right of a presumed father to challenge paternity pursuant to the UPA must be exercised within strict statutory time limits or it is lost, whatever the results of the scientific tests regarding paternity. See § 19–4–107(1)(b), C.R.S.1999 (an action to disestablish paternity of a presumed father cannot be brought later than five years after a child's birth).

Here, even after the dissolution was filed and the trial court had declared Ames to be the biological father, Smith's lengthy relationship with the children gave him standing under the Uniform Dissolution of Marriage Act to pursue custody or parenting rights of the children. See *In re Custody of A.D.C.*, 969 P.2d 708 (Colo.App.1998) (§ 14–10–123(1)(b), C.R.S.1999 permits the non-parent to commence custody proceeding while the child is in that person's physical custody and § 14–10–123(1)(c), C.R.S.1999, permits the proceeding to be commenced up to six months after physical custody has terminated); *In re Marriage of Dureno*, 854 P.2d 1352 (Colo.App.1992).

This standing is based on the recognition that one who performs the role of a parent, such as a stepparent, foster parent, grandparent, or other nurturing figure, may become a child's psychological parent and is entitled to certain rights that historically have been conferred only on biological parents. See *In re Custody of C.C.R.S.*, 892 P.2d 246 (Colo.1995)(upholding trial court's determination that it was· in child's best interests to remain in custody of psychological parents, rather than to have custody transferred to biological mother).

It is true that following the test results and the court order declaring Ames to be the biological father, Smith's status as the children's presumed father was rebutted, and Smith could ask to be relieved of future obligations with respect to the children. In this respect, the status of a custodian, stepparent, or other similarly situated person differs from that of a biological or adoptive parent because one standing *in loco parentis* may elect to be relieved of that status and the attendant obligations. See *People in Interest of P.D.*, 41 Colo.App. 109, 580 P.2d 836 (1978); H. Clark, *Domestic Relations* § 6.2 (1968).

Nevertheless, the fact that Smith asked to be, and was, relieved of *future* parental obligations did not, in my view, invalidate *ab initio* the duties arising from his previous legal status. Rather, I conclude that both Smith and Ames owed separate duties of support to the children which arose on their dates of birth. Smith's duty only ended when Ames' status as the biological father was declared, and when Smith's duty was terminated by the court at his request.

In sum, I agree with the majority that once Ames was determined to be the biological father, the trial court had authority under the statute to order him to pay child support "for a time period which occurred prior to the entry of the order establishing paternity." Section 19–4–116(4), C.R.S.1999.

I also agree that the statute gives the court discretion to require Smith to reimburse Ames, based on equitable principles, "the proportion of the expenses already incurred that the court deems just." Section § 19–4–116(4). But, I would hold that this determination may only be made after considering the circumstances of all *three* parties who had a duty of support prior to the declaration of paternity: Smith, Ames, and the mother. *See* § 19–4–116(6), C.R.S.1999 (listing relevant factors to determine amount to be paid by "a parent" for the support of the child). It may not be based on the assumption that Smith's duty of child support was rendered void *ab initio* by the court's declaration of Ames' paternity.

For this reason, I would reverse the judgment and remand for reconsideration of the reimbursement order.