KERNS, Appellant,

v.

SCHMIDT et al., Appellees.

[Cite as *Kerns v. Schmidt* (1994), 94 Ohio App.3d 601.]

Court of Appeals of Ohio,
Franklin County.

No. 93APE09–1288.

Decided June 9, 1994.

*Sambol & Associates* and *Marylee Gill Sambol,* for appellant.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A.,* and *Patrick F. Smith,* for appellee Grant Schmidt, M.D.

*Daulton, Maguire, Vivyan & Schneider* and *Patrick D. Maguire,* for appellee Sharon (Kerns) Baker.

BOWMAN, Judge.

In August 1991, appellant, Phillip Kerns, initiated this action against appellees, Grant Schmidt, M.D., and against his former wife, Sharon Kerns Baker ("Baker"), alleging that the two had committed fraud by failing to obtain his consent to his wife's artificial insemination by a nonspousal donor, in violation of R.C. 3111.30 through 3111.38.[1] Appellant's claim against Riverside Hospital was voluntarily dismissed.

Kerns had fathered two children during a previous marriage and undergone a vasectomy. Although Kerns did not desire any more children, Baker wanted a child and Kerns accompanied her when she first visited Schmidt to discuss the possibility of artificial insemination by a nonspousal donor; however, Kerns contends he never consented to the procedure. Despite the alleged lack of consent, Baker continued as Schmidt's patient, was artificially inseminated and became pregnant around August 1987. Upon learning that Baker was pregnant, Kerns moved out of the marital residence. The child was born in April 1988, and Baker initiated divorce proceedings shortly thereafter.

Various procedural problems surfaced during the pendency of the divorce action, both with Baker's ability to obtain service of process on Kerns, and with Kerns's ability to retain counsel. The procedural history of the divorce action is set forth in this court's decision in *Kerns v. Kerns* (1993), 87 Ohio App.3d 698, 622

---

1. These sections provide that nonspousal artificial insemination of a married woman may occur only upon the written consent of both the woman and her husband. R.C. 3111.34. R.C. 3111.35, *inter alia,* requires the physician performing a nonspousal artificial insemination to obtain the written consent of the recipient, which shall include the signature of the recipient's husband. Pursuant to R.C. 3111.37(A), the husband of a woman who is the recipient of a nonspousal artificial insemination, if he consents to the procedure, is treated as the natural father of a child conceived as a result of the artificial insemination.

   R.C. 3111.38 addresses the effect of noncompliance with the statute, and states that:
   "The failure of a physician or person under the supervision and control of a physician to comply with the applicable requirements of sections 3111.30 to 3111.37 of the Revised Code shall not affect the legal status, rights, or obligations of a child conceived as a result of a nonspousal artificial insemination, a recipient, a husband who consented to the non-spousal artificial insemination of his wife, or the donor. If a recipient who is married and her husband make a good faith effort to execute a written consent that is in compliance with section 3111.35 of the Revised Code relative to a non-spousal artificial insemination, the failure of the written consent to so comply shall not affect the paternity consequences set forth in division (A) of section 3111.37 of the Revised Code."

   No other effect of noncompliance is indicated in R.C. 3111.30 through 3111.38; thus, no explicit penalty attaches to the physician or the recipient who fails to obtain the consent of the husband.

N.E.2d 1149, in which this court noted that, in response to Baker's complaint for divorce, Kerns filed both a counterclaim and an "Action for the Determination of Parentage," alleging that the child was not issue of the marriage and that Baker had been artificially inseminated without Kerns's consent. In our previous decision, this court outlined Kerns's repeated failure to timely file pleadings and make appearances, which was compounded by his failure to timely assert a Civ.R. 60(B) motion for relief from the decree of divorce. Thus, despite the trial court's having entered judgment without Kerns's having appeared for trial, which this court found was partially the result of conduct by Baker's counsel, this court affirmed the trial court's denial of the Civ.R. 60(B) motion because said motion was untimely. *Id.* at 703, 622 N.E.2d at 1152–1153.

Considering the divorce decree again as a part of the record currently before us, we observe that, although the issue of the child's parentage was apparently never fully litigated, the divorce decree stated that "one child was born as issue of said marriage." In deciding the issue of custody, the court found that Baker was artificially inseminated and the child "is deemed an issue of the marriage," pursuant to R.C. 3111.03.[2] The domestic relations court additionally ordered child support but never addressed Kerns's allegation that the child was the result of a nonspousal artificial insemination and, therefore, was not his child.

In August 1991, Kerns filed the instant cause, alleging fraud by both Schmidt and Baker and seeking damages for their failure to obtain his consent to the artificial insemination.

Schmidt countered with a motion to dismiss, alleging Kerns's claim was time-barred as a medical claim under R.C. 2305.11 and, further, that Kerns's claim was unsupportable because he had failed to present expert testimony regarding Schmidt's standard of care, that R.C. 3111.34 allowed no cause of action for a physician's breach of a duty to obtain consent, and that Kerns's child support obligations arose out of the divorce decree rendering the question *res judicata.*

In August 1993, the trial court granted Schmidt's motion to dismiss, additionally ruling that Kerns was raising parentage issues which were the province of the domestic relations court, and dismissing the action as to Baker as well. The court also overruled a motion for summary judgment by Baker.

Kerns now assigns the following as error:

---

2. Although the domestic relations court referred to R.C. 3113.03 in its decision, that section was repealed in 1974 and pertained to the neglect and abandonment of a child or pregnant woman.

"First Assignment of Error

"The trial court erred when it sustained defendant Grant Schmidt, M.D.'s motion to dismiss.

"Second Assignment of Error

"The appellant stated a cause of action in equitable fraud against defendant-appellee Sharon Baker.

"Third Assignment of Error.

"The trial court erred when it found that the questions raised in this case involve the issue of paternity which are [sic] within the exclusive jurisdiction of the domestic relations court.

"Fourth Assignment of Error

"The trial court erred when it dismissed appellant's complaint because O.R.C. § 3111.34 does not provide for a private right of action.

"Fifth Assignment of Error

"The trial court erred when it dismissed appellant's complaint because O.R.C. § 3111.34 creates no private right of action.

"Sixth Assignment of Error

"The trial court had a duty to enforce O.R.C. § 3111.34 and O.R.C. § 3111.35.

"Seventh Assignment of Error

"The trial court erred when it overruled plaintiff's motion for summary judgment alleging negligence per se against Grant Schmidt, M.D."

Baker has filed a cross-appeal in this matter in which she raises one assignment of error:

"The trial court erred when it overruled a Motion For Summary Judgment filed on behalf of Cross–Appellant Baker."

Baker's sole assignment of error on cross-appeal asserts that the trial court should have granted her motion for summary judgment since Kerns's claims were barred by *res judicata*. Kerns's second and third assignments of error both pertain to Kerns's allegations against Baker, charging that the trial court should have determined he stated a claim upon which relief could be granted by asserting equitable fraud against Baker, and that the court should not have held that his claims involved parentage and properly belonged before the domestic relations court. These assignments will be addressed together.

Summary judgment is only proper where the trial court, construing the facts in a light most favorable to the nonmovant, determines there are no genuine issues of material fact, and that the movant is entitled to judgment as a matter of law.

*Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

According to Baker, Kerns's claims disputed the parentage of the child and were, or should have been, raised during the pendency of the divorce action. Therefore, she asserts that, because the divorce case resulted in a final decree which determined the child to be issue of the marriage and ordered Kerns to pay child support, the question of parentage was *res judicata* as to claims asserted against her and may not be relitigated in this action. Thus, Baker argues there were no genuine issues of material fact and she was entitled to judgment as a matter of law.

In overruling Baker's motion for summary judgment, the trial court found that the domestic relations court had not determined the question of the child's parentage, thus rejecting Baker's contention that the divorce decree had rendered that issue *res judicata*. The court stated:

" * * * A review of the Complaint filed in the divorce action indicates that Defendant Baker did not plead spousal consent for non-spousal artificial insemination. At most, this Complaint can be construed as asserting the rebuttable presumption that a child born during marriage is presumed to be the issue of the marriage. Additionally, there is no evidence that the domestic relations court based its ruling upon R.C. 3111.03(B) and the Court shall not accept Defendant Baker's invitation to speculate as to the grounds for the decision regarding the status of the child. One last point, the Court has carefully examined the divorce decree and notes that the decree does not acknowledge that the artificial insemination of Defendant Baker was, in fact, a non-spousal artificial insemination. Based upon the foregoing, the Court views these causes of action as separate and distinct."

Concluding that the doctrine of *res judicata* did not bar the action as between Kerns and Baker, the court overruled Baker's motion for summary judgment. Nevertheless, the court's dismissal of the action as to Baker in its decision on Schmidt's motion to dismiss effectively concluded Kerns's lawsuit.

In *Whitehead v. Gen. Tel. Co.* (1969), 20 Ohio St.2d 108, 112, 49 O.O.2d 435, 437–438, 254 N.E.2d 10, 12, the court articulated the doctrine of *res judicata* as follows:

"The doctrine of *res judicata* involves two basic concepts. * * * First, it refers to the effect a judgment in a prior action has in a second action based upon the same cause of action. The Restatement of the Law, Judgments, Section 45, uses the terms 'merger' and 'bar.' If the plaintiff in the prior action is successful, the entire cause of action is 'merged' in the judgment. The merger means that a successful plaintiff cannot recover again on the same cause of action, although he

may maintain an action to enforce the judgment. If the defendant is successful in the prior action, the plaintiff is 'barred' from suing, in a subsequent action, on the same cause of action. The bar aspect of the doctrine of *res judicata* is sometimes called 'estoppel by judgment.' Restatement of the Law, Judgments, Section 45, comment (b).

"The second aspect of the doctrine of *res judicata* is 'collateral estoppel.' While the merger and bar aspects of *res judicata* have the effect of precluding a plaintiff from relitigating in the same cause of action against the same defendant, the collateral estoppel aspect precludes the relitigation, in a second action, of *an issue* that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action. * * * In short, under the rule of collateral estoppel, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit." (Emphasis *sic.*)

Thus, the issue with regard to Kerns's claims against Baker in the case at bar is whether the domestic relations court's determination in the divorce decree, that one child was born as issue of the marriage, operated to collaterally estop Kerns from relitigating this issue in the instant action.

In *Gilbraith v. Hixson* (1987), 32 Ohio St.3d 127, 129, 512 N.E.2d 956, 959, the court held the doctrine of *res judicata* operates to give conclusive effect to a determination of parentage contained in a dissolution decree or legitimation order, thus barring a subsequent parentage action. Likewise, a determination of parentage contained in a divorce decree would also invoke the doctrine of *res judicata*, thus barring a subsequent claim based upon an issue of parentage.

█ Although the trial court properly concluded that the domestic relations court did not resolve the issue of Kerns's consent to the artificial insemination, Kerns was collaterally estopped by the divorce decree from relitigating the parentage issue in this case. In his previous appeal to this court, Kerns asserted that the domestic relations court should have granted his Civ.R. 60(B) motion on the basis that he lacked proper notice and an opportunity to be heard prior to the issuance of the divorce decree. This court rejected that claim, holding that Kerns's motion for relief from judgment had not been timely and, therefore, that the domestic relations court was within its discretion to deny the motion. *Kerns*, 87 Ohio App.3d at 703, 622 N.E.2d at 1152–1153. Thus, regardless of whether the divorce decree properly determined the child was born as issue of the marriage, the untimeliness of Kerns's Civ.R. 60(B) motion resulted in the divorce decree being upheld. See, generally, *Weber v. Weber* (1991), 74 Ohio App.3d 396, 599 N.E.2d 288. Moreover, Kerns clearly knew, during the pendency of the divorce, that the child was not his and that his lack of consent to the artificial insemination needed to be adjudicated. But because Kerns did not effectively

assert his defense, this issue apparently was not properly before the domestic relations court. A missed opportunity to raise the issue of parentage during the pendency of a divorce can result in a subsequent parentage action being barred by the doctrine of *res judicata*. *Kashnier v. Donelly* (1991), 81 Ohio App.3d 154, 156, 610 N.E.2d 519, 520.

Kerns admits as much, stating that the action filed in this case did not question parentage and that Kerns accepts the finality of the domestic relations court's decree. Instead, Kerns's second and third assignments of error challenge whether Baker committed fraud in failing to obtain his consent to the artificial insemination.

Despite Kerns's protestations that his action for fraud has nothing to do with parentage, the essence of Kerns's claim against Baker is that he is not the father of the child, that Baker did not obtain his consent prior to becoming artificially inseminated, that he has no duty to support the child, that he has been damaged by being forced to pay child support for a child who is not his, and that he has been required to seek psychological counseling for extreme emotional distress. Because Kerns's action contests the consequences of an earlier decision imposing an obligation to support the child, and is an attempt to rebut the presumption apparently followed by the domestic relations court that a child born during a marriage is the husband's natural child, R.C. 3111.03, the action is a parentage action which must be commenced either as a part of a divorce action or as an independent action in accordance with R.C. Chapter 3111.

We therefore find that the gravamen of Kerns's claim with regard to Baker contests parentage, that Kerns knew he was not the father of the child during the pendency of the divorce and had a duty to raise the issue at that time, that any remedy Kerns had for harm done by Baker arose out of the divorce action, and that Kerns is collaterally estopped from relitigating the parentage issue, which was determined by the divorce decree.

Baker's assignment of error on cross-appeal is sustained on the basis that the trial court erred in failing to find Baker was entitled to judgment as a matter of law because the issue of the parentage of the child was barred by collateral estoppel. Kerns's second and third assignments of error are overruled on the basis that Kerns's cause of action alleging fraud against Baker disputed the parentage of the child, and could not be maintained as an independent action for fraud.

Kerns's first, fourth and fifth assignments of error are related and will be addressed together. By these assignments of error, Kerns asserts that the trial court erred in dismissing his cause of action against Schmidt on the basis that the relevant statutes do not afford him a remedy for Schmidt's failure to obtain Kerns's consent to the artificial insemination.

Neither Schmidt's motion to dismiss nor the trial court's decision on the motion identifies the rule of civil procedure which would authorize the dismissal. Clearly, the requirements of Civ.R. 41(B) have not been met, nor did Schmidt couch his motion as one for summary judgment under Civ.R. 56, although it would appear the trial court treated the motion to dismiss, which argues matters outside the pleadings, in that manner. Finally, the motion to dismiss does not expressly identify Civ.R. 12(B) as its basis, although Schmidt did assert the court's lack of jurisdiction over the action and Kerns's inability to provide evidentiary support for the allegations in his complaint.

Kerns has not objected to the procedural manner in which Schmidt's motion to dismiss was raised or adjudicated, and so we will not address any possible procedural error in the trial court's dismissal. Instead, we will interpret the motion as being a motion to dismiss for failure to state a claim on which relief can be granted under Civ.R. 12(B)(6). It has been held that such a motion will be successful only where it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

According to Kerns, in the absence of a statutory remedy, the trial court was required to have afforded him a common-law remedy, otherwise the statutory requirement of consent is rendered a nullity. Kerns asserts that, in the absence of a statutory remedy for breach of a statute, a court must fashion a common-law remedy.

In addressing this issue, the trial court relied upon *Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144, which addressed whether a private civil action for damages may be maintained where no statutory remedy is provided for violation of an employment statute relating to age discrimination. Although *Fawcett* involved an unrelated statute, the trial court found its reasoning applicable to the issue raised herein, stating that:

"It appears to the Court that the General Assembly, by enacting a statute addressing non-spousal artificial insemination, sought to provide a solution to the potential parentage issues which may arise as a result of a woman who is artificially inseminated by a donor other than her husband. An example of the legislature's concern over the paternity question is evidenced by the language of R.C. 3111.38 stating that the failure to secure a signed consent form from the recipient and husband will not alter the paternity consequences. It follows that if the General Assembly wished to confer the right to compensatory damages for noncompliance with the written consent requirement, it would have expressly so provided."

In *Fawcett,* the court relied on *Johnson v. United States Steel Corp.* (1964), 348 Mass. 168, 202 N.E.2d 816, which concluded that the duty alleged to have been breached in that case was "solely the creature of statute; no such duty exists at common law." Under *Fawcett,* because the statute did not expressly provide a civil remedy, and because there was no clear implication that such a remedy was intended, no common-law remedy could be obtained. However, the court also determined that the relevant statutes provided an administrative remedy, inferring that the General Assembly intended that violations of the statute be prosecuted by the Department of Industrial Relations, rather than redressed by private civil action. *Fawcett,* 46 Ohio St.2d at 248–249, 75 O.O.2d at 293–294, 348 N.E.2d at 146–147.

By contrast, R.C. 3111.30 through 3111.38 provides no remedy whatsoever for a violation of the physician's duty to obtain consent of a nondonor husband. Moreover, there is support for a finding that a physician's duty to obtain consent prior to performing a medical procedure existed at common law and is not "solely the creature of statute." *Id.* at 249, 75 O.O.2d at 293, 348 N.E.2d at 147.

We disagree with the trial court that the lack of a statutory remedy for a physician's failure to comply with the consent requirements of R.C. 3111.30 through 3111.38 left Kerns without possible legal recourse against Schmidt.[3] The trial court's holding fails to acknowledge that a physician's violation of the statutory requirement of consent could constitute an interference with the

---

3. Our analysis of R.C. 3111.30 to 3111.38 reveals that the legislature simply has failed to address the possibility that a physician might not obtain the husband's consent, either deliberately or through oversight, and how a lack of consent might affect both the husband's legal status as the father of the child and the physician's legal liability.

Given the history of the apparent source of Ohio's Nonspousal Artificial Insemination Law, it is not surprising that no provision was made for correcting problems arising out of a failure to obtain consent.

As is the case with the majority of states, Ohio's law traces its origins to Section 5 of the National Conference of Commissioners on Uniform State Laws' Model Uniform Parentage Act ("UPA"). See, generally, Note, The Need for Statutes Regulating Artificial Insemination by Donors (1985), 46 Ohio St.L.J. 1055. The primary purpose of the UPA was to resolve legitimacy concerns arising out of the marital status of a child's parents and, with respect to Section 5, to protect recipients of artificial insemination and their families from paternity claims of nonspousal donors. As its drafters admitted, Section 5 was never intended as a comprehensive answer to all questions raised by the practice of artificial insemination. *In the Interest of R.C.* (Colo.1989), 775 P.2d 27, 30–31.

Nevertheless, by requiring a physician to obtain the husband's consent prior to performing artificial insemination by a nonspousal donor, Ohio's law anticipates the possibility that such consent might not be obtained, but neglects to acknowledge the potential harm flowing from, and the proper remedy for, the lack of consent. The concerns of the past regarding legitimacy of the offspring of those participating in nonspousal artificial insemination, and the purported rights of donors, having been resolved, it would now seem prudent for the General Assembly to consider questions surrounding nonspousal artificial insemination such as those posed by this appeal.

husband's choice not to procreate, which has been recognized as a constitutionally protected privacy interest. *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 46, 2 O.O.3d 133, 135, 356 N.E.2d 496, 499.

In *Bowman,* plaintiffs filed a complaint against Mrs. Bowman's doctor, alleging he was negligent in performing a bilateral partial salpingectomy, a tubal ligation. Following the surgery, Mrs. Bowman became pregnant and gave birth to twins. The Ohio Supreme Court found plaintiffs had a valid cause of action. The court stated:

" * * * For this court to endorse a policy that makes physicians liable for the foreseeable consequences of all negligently performed operations *except* those involving sterilization would constitute an impermissible infringement of a fundamental right." (Emphasis *sic.*) *Id.* at 46, 2 O.O.3d at 135–136, 356 N.E.2d at 499.

Since Mrs. Bowman and her husband gave consent to the surgery, and yet were nonetheless able to pursue a claim against her doctor, we find no reason why a husband who did not consent to a nonspousal artificial insemination should not be able to timely pursue a claim against a doctor who negligently fails to obtain his consent. In each situation, the doctor's negligence results in the parties' being burdened with the costs and expenses of childbirth. See *Johnson v. Univ. Hospitals of Cleveland* (1989), 44 Ohio St.3d 49, 540 N.E.2d 1370, which limits damages for wrongful pregnancy to those of the pregnancy itself and does not include the costs of child rearing.

However, in the instant case, Kerns has not stated a claim for wrongful pregnancy, or even medical negligence, possibly because the statute of limitations barred him from doing so. Instead, his action against Schmidt is for fraud which, he maintains, should not have been dismissed because such claims against physicians are maintainable pursuant to *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709.

In *Gaines,* the court held a positive misrepresentation of a patient's condition, upon which the patient relies to his detriment, was actionable as fraud independent of any claim of malpractice. *Id.* at paragraph one of the syllabus. The court set forth the elements of fraud as follows:

" * * * (a) [A] representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Id.* at 55, 514 N.E.2d at 712.

The court then stated that the evidence in *Gaines* would allow a reasonable person to conclude that the elements of fraud were present and that summary judgment was an inappropriate disposition of that case.

The defendant in *Gaines* asserted that the plaintiff's only recourse lay in asserting a medical malpractice claim, to which the court replied:

" * * * The fraud action is separate and distinct from the medical malpractice action which stems from the surrounding facts where the decision to misstate the facts cannot be characterized as medical in nature. In the instant cause, it cannot be said that the statement to appellant that her IUD had been removed when in fact it had not was motivated by any medical consideration. Cases may exist where the withholding of information may be medically justified, *e.g.*, where the patient's known tendency to react hysterically to bad news would interfere with vital treatment. Reasonable minds could certainly conclude that the misstatement in the instant cause was prompted not by medical concerns but by motivations unrelated and even antithetical to appellant's physical well-being." (Footnote omitted.) *Id.* at 56, 514 N.E.2d at 712.

Thus, the court reversed the summary judgment and remanded the matter for a determination of whether the defendant had intentionally misrepresented to the plaintiff that her intrauterine device had been removed when it had not and whether that was the proximate cause of her injury.

■ In the instant case, Kerns alleges that Schmidt had assured him there would be no artificial insemination without Kerns's consent, and that this statement constituted a misrepresentation which met the requirements for a cause of action for fraud. As was the case in *Gaines,* such a statement, if made, could not be characterized as medical in nature, or motivated by any medical consideration. Moreover, Kerns has asserted that Schmidt breached a duty to refrain from performing the nonspousal artificial insemination without Kerns's consent, and that Schmidt knew he needed to obtain such consent yet disregarded that requirement with the intent to mislead Kerns, who justifiably relied upon the assurances that no artificial insemination would be performed without his consent. Finally, Kerns has also asserted that he was damaged by Schmidt's conduct. Thus, under the definition of "fraud" set forth in *Gaines,* it would appear that Kerns has at least sufficiently alleged fraud to overcome a Civ.R. 12(B)(6) motion, since he has set forth in his complaint facts which, if proven, could entitle him to recovery.

In any event, the trial court's decision on Schmidt's motion to dismiss addressed only whether R.C. 3111.38 provided for a private cause of action, and did not consider either whether Kerns sufficiently alleged fraud to avoid dismissal pursuant to Civ.R. 12(B)(6), or whether *Gaines* would allow the spouse of a

recipient of nonspousal artificial insemination to raise an independent cause of action for fraud. Given our finding that the trial court improperly held no private right of action could be maintained because the General Assembly had not so provided in R.C. 3111.30 through 3111.38, we think it necessary that the trial court now address the remaining issues as to the applicability of *Gaines* to the facts in the case at bar.

By so holding, we are not suggesting that the trial court is bound to follow *Gaines.* In *Gaines,* the only injured plaintiff was the patient who underwent the medical procedure. In the case of a nonspousal artificial insemination, despite the fact that only the recipient personally undergoes the procedure, the husband is an inextricable part of the process, partly because his consent is statutorily required, and partly because of the degree to which procreation decisions have an impact upon both parties to the marriage. Thus, *Gaines* raises the question whether having the status of patient is a prerequisite for asserting fraud. Moreover, if a plaintiff must be a patient to assert fraud against a physician, the question arises as to whether the nature of the marital relationship would permit Kerns, as a person unavoidably affected by his wife's nonspousal artificial insemination, to be considered a patient for the purposes of asserting fraud. The trial court has not had the opportunity to address these questions, and we will refrain from doing so herein.

Based upon these considerations, we sustain Kerns's first, fourth and fifth assignments of error.

Kerns's sixth assignment of error charges that the trial court had a duty to enforce R.C. 3111.34 and 3111.35. By this assignment, we understand Kerns to be reiterating his assertion that the trial court erred in finding that the pertinent Revised Code sections create no private right of action. Inasmuch as we have addressed that issue under Kerns's other assignments of error, we find it unnecessary to determine whether the trial court had a "duty" to enforce the statutes under these facts. Kerns's sixth assignment of error is thus overruled as moot.

Kerns's seventh assignment of error contends that Schmidt's failure to obtain his consent constituted negligence *per se.* Assuming *arguendo* that the facts support a finding that Schmidt breached a statutory duty owed to Kerns, thereby proximately causing him harm, the statute of limitations for bringing the action would be the same as for a "medical claim," as defined under R.C. 2305.11. Since Kerns did not timely file his action pursuant to the limitations set forth in R.C. 2305.11, his argument that Schmidt was negligent *per se* is not well taken. Therefore, Kerns's seventh assignment of error is overruled.

In conclusion, the trial court not only erred in determining that the relevant statutes' lack of a private cause of action for a physician's failure to obtain the husband's consent to a nonspousal artificial insemination precluded recovery for damages by a nonconsenting husband, the court also erred in failing to find Kerns had stated a claim upon which relief could be granted by alleging fraud against Schmidt.

Based upon our conclusion that Kerns's was collaterally estopped from asserting his claim against Baker, we overrule Kerns's second and third assignments of error, and sustain Baker's assignment of error on cross-appeal. Kerns's first, fourth and fifth assignments of error are sustained, and his sixth and seventh assignments of error are overruled. The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded to the trial court with instructions to enter judgment in accordance with the opinion rendered herein.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

PEGGY BRYANT and TYACK, JJ., concur.