[No. A087452. First Dist., Div. One. Apr. 28, 2000.]

HONG SOO SHIN, Plaintiff and Appellant, v.
OYOUNG KONG, Defendant and Respondent.

## COUNSEL

Arlo H. Smith for Plaintiff and Appellant.

Burge, Strid and Dickinson and Lawrence A. Strid for Defendant and Respondent.

## OPINION

**MARCHIANO, J.**—When appellant was divorced from his wife, he learned for the first time that he was not the biological father of the child born during their marriage. After disclaiming all parental rights to the child in the dissolution proceeding, appellant sued his wife's doctor as the true biological father. In a contemporary interpretation of an ancient grievance, appellant alleged that the doctor performed an artificial insemination on his ex-wife without his consent resulting in the birth of a child assumed to be his son and demanded tort damages. We affirm the trial court's judgment on the pleadings, and find that appellant's complaint is barred for lack of a legal duty owing from the doctor to appellant and for reasons of public policy embodied in statutes that preclude recovery for breach of moral duties.

### BACKGROUND

Until September of 1997, when his wife filed for divorce, appellant was married to Sil Shin. Respondent, Dr. Oyoung Kong, is a medical doctor who specializes in obstetrics and gynecology. Appellant's wife worked for Dr. Kong during the time of the events in the complaint. According to appellant's complaint in this action, Dr. Kong rendered medical services to Sil Shin, consisting of artificial insemination, without "advising, consulting or obtaining the permission" of appellant. As a result of the procedure, Sil Shin gave birth to the child. Appellant believed that he was the biological father of the child and "grew emotionally attached to and loved" the child. Appellant also provided financial support for the child from his birth in 1993 until the dissolution.

When Sil Shin filed for divorce, appellant moved out of the family home at her request. In December of 1997, appellant learned that he was not the biological father of the child. In February and June of 1998, Dr. Kong revealed that he had artificially inseminated Sil Shin and was the biological father of the child. The complaint alleges that Dr. Kong failed to inform appellant of the facts relating to the artificial insemination and the biological parentage of the child. Pursuant to a stipulation in the dissolution proceedings, it was settled that appellant was not the child's biological father, appellant's name was removed from the birth certificate, and appellant was relieved of any duty of child support.

On June 16, 1998, appellant filed a complaint against Dr. Kong, alleging multiple causes of action arising out of the alleged artificial insemination. The causes of action included intentional infliction of emotional distress, negligent infliction of emotional distress, professional malpractice, general negligence, violation of Family Code[1] section 7613, fraud, misrepresentation, invasion of privacy and "false light" (allowing appellant and others to think the child was appellant's biological child). The final cause of action alleged that all of the acts of Kong were done with malice, fraud and intent to oppress appellant, so as to entitle appellant to punitive damages.

On February 11, 1999, Kong filed a motion for judgment on the pleadings, arguing, inter alia, that he owed no duty to appellant, who was never his patient. At oral argument of the motion, the court agreed with Dr. Kong. Appellant asked for leave to amend. The court stated: "What you are not going to plead is that the father here provided sperm." Appellant's counsel agreed that he could not plead that fact, and asked to amend to plead other provisions of the Family Code and a Health and Safety Code section regarding transmission of confidential information. The court denied the request, finding that absent a relationship between appellant and the doctor that would give rise to a duty, appellant could plead no viable cause of action. Judgment was entered, and this appeal followed.

DISCUSSION

On appeal from a judgment on the pleadings, we accept as true all well-pleaded allegations in the complaint and matters properly subject to judicial notice. (*American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1118 [51 Cal.Rptr.2d 251, 912 P.2d 1198]; *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 27 [61 Cal.Rptr.2d 518].) The motion should be granted only if the complaint fails to state a cause of action. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 954, pp. 410-411.) Because the purpose of a motion for judgment on the pleadings is to

---

[1]Unless otherwise indicated, all statutory references are to the Family Code.

test the sufficiency of the pleadings, the court does not consider factual information outside the complaint and the judicially noticed matters.[2]

We stress at the outset that this case is not about a couple who jointly sought a doctor's advice and services regarding artificial insemination.[3] Appellant concedes that his wife sought respondent's services without his knowledge.[4] It is not a case where the wrong sperm was used instead of the husband's sperm delivered to a doctor for use in artificial insemination of his wife.[5] Appellant concedes this point as well. Appellant was not the patient of Dr. Kong, did not participate in the procedure and had no contact with the doctor. Finally, this is not a disciplinary matter against a physician for improper sexual relations with a patient. The facts alleged in the complaint merely disclose that appellant's ex-wife lied to her husband about the parentage of a child born during the marriage after seeking artificial insemination from Dr. Kong.

---

[2]In this case, respondent requested the court to take judicial notice of a certified copy of the child's birth certificate and various portions of the record of the dissolution proceeding. The certified copy of the birth certificate and the stipulation in the dissolution proceeding are appropriate subjects of judicial notice. (Evid. Code, § 452, subd. (d).) Appellant has not disputed the accuracy of the records referenced by respondent, and we consider those documents in connection with appellant's claim that he should have been allowed to amend to allege additional facts.

[3]A doctor who counseled a childless couple on artificial insemination and agreed to perform the procedure on the wife with the husband's sperm was subject to suit by the couple as well as other legal consequences when he substituted his own sperm. (See, e.g., *James v. Jacobson* (4th Cir. 1993) 6 F.3d 233; *U.S. v. Jacobson* (E.D.Va. 1992) 785 F.Supp. 563; *St. Paul Fire and Marine Ins. Co. v. Jacobson* (E.D.Va. 1993) 826 F.Supp. 155, 158, fn. 3 [listing civil actions against physician for unauthorized use of physician's own semen].) This case, however, involves a married woman who obtained artificial insemination without telling her husband. Here, the doctor had no contact with the husband regarding the details, or even the existence, of the artificial insemination.

[4]In his reply brief, appellant argues that respondent did not obtain the wife's consent to use the doctor's sperm in the procedure. Appellant relies on his father's declaration that Dr. Kong told the father that Sil Shin brought dead semen to his office and that he substituted his own sperm without telling her, and was going to tell her in June of 1998. Even if we credit this declaration, there is no allegation that Mrs. Shin objected to the true state of facts when told. Furthermore, the fact that a wife may have a cause of action against the doctor does not, without more, create one in the husband. *Custodio v. Bauer* (1967) 251 Cal.App.2d 303 [59 Cal.Rptr. 463, 27 A.L.R.3d 884], cited as support for such a derivative cause of action, involved a negligent sterilization procedure. Both husband and wife were plaintiffs, with liability based, in part, on the representation that the couple could engage in intercourse without the use of contraceptive devices. (*Id.* at pp. 312-313, 322.) Unlike appellant, the husband in that case was intended to, and did, rely on the misrepresentations of the physician.

[5]We do not decide that a cause of action might be based on such facts, only that the existence of a duty would be clearer in such a situation. However, in *Harnicher v. Univ. of Utah Medical Center* (Utah 1998) 962 P.2d 67, the Utah Supreme Court upheld the dismissal of a couple's claim against a medical center which used sperm from a donor other than the one the couple selected for artificial insemination. The court rested its decision on public policy reasons and the nature of the alleged harm, and did not address the issue of duty.

Appellant's arguments in support of reversal of the judgment are primarily based on his contention that a physician who performs artificial insemination on a married woman has a duty to obtain the husband's consent. Appellant proposes several methods of imposing liability on Dr. Kong. He relies on section 7613, the relationship between the parties, an emotional distress claim and an intentional tort theory. ■ "A duty of care may arise through statute, contract, the general character of the activity, or the relationship between the parties." (*Alexandria S. v. Pacific Fertility Medical Center, Inc.* (1997) 55 Cal.App.4th 110, 116 [64 Cal.Rptr.2d 23].) However, appellant has not identified any cognizable basis for imposition of a duty on the part of his ex-wife's doctor.

*Section 7613 Does Not Apply to This Case*

■ Appellant argues that the duty of a physician who performs an artificial insemination is codified in section 7613. He contends that the statute mandates that a physician must obtain the written consent of the husband of any artificial insemination patient. According to appellant, section 7613 defines a duty, which was breached by Dr. Kong.

Section 7613 is a part of the Uniform Parentage Act (UPA). The statute provides: "(a) If, under the supervision of a licensed physician and surgeon and with the consent of her husband, a wife is inseminated artificially with semen donated by a man not her husband, the husband is treated in law as if he were the natural father of a child thereby conceived. The husband's consent must be in writing and signed by him and his wife. The physician and surgeon shall certify their signatures and the date of the insemination, and retain the husband's consent as part of the medical record, where it shall be kept confidential and in a sealed file. However, the physician and surgeon's failure to do so does not affect the father and child relationship. All papers and records pertaining to the insemination, whether part of the permanent record of a court or of a file held by the supervising physician and surgeon or elsewhere, are subject to inspection only upon an order of the court for good cause shown.

"(b) The donor of semen provided to a licensed physician and surgeon for use in artificial insemination of a woman other than the donor's wife is treated in law as if he were not the natural father of a child thereby conceived."

The California UPA was designed to equalize the status of legitimate and illegitimate children, and is concerned with the legal paternity of children conceived by artificial insemination. (See De Haan, *Whose Child Am I? A*

*Look At How Consent Affects A Husband's Obligation To Support A Child Conceived Through Heterologous Artificial Insemination* (1999) 37 Brandeis L.J. 809.) "As with the UPA, section 7613 does not address the physician's liability; furthermore, a review of the legislative history of this statute does not illuminate the Legislature's intent regarding the scope of the physician's tort liability." (*Alexandria S. v. Pacific Fertility Medical Center, Inc., supra,* 55 Cal.App.4th 110, 119; see generally Annot., Rights and Obligations Resulting From Human Artificial Insemination (1991) 83 A.L.R.4th 295.)

In the comment accompanying the text of the UPA, from which section 7613 was taken, it is noted that: "This Act does not deal with many complex and serious legal problems raised by the practice of artificial insemination." (9B West's U. Laws Ann. (1987) U. Parentage Act, com. to § 5, p. 302.) The clear words of section 7613 limit its application to determination of the identity of a child's father, and do not address the liability of a doctor. The statute provides a method for obtaining consent before imposing the duties of a father on the husband of a married woman who undergoes artificial insemination. It also insulates a donor of semen from parental liability when the parties comply with its provisions. The statute does not apply if consent is not obtained for the procedure. (*Jhordan C. v. Mary K.* (1986) 179 Cal.App.3d 386, 398 [224 Cal.Rptr. 530] [statute inapplicable where parties failed to invoke its protection].) Contrary to appellant's unsupported argument, the statute does not establish a requirement that a woman may not obtain artificial insemination without the consent of her husband.[6] Because section 7613 was not designed to address a physician's liability, it does not create a tort duty on the part of the physician.

Appellant argues the declarations of two physicians that conclude that Dr. Kong violated professional ethical standards and a quote from an article in a medical journal established that respondent owed a duty to appellant. The declarations were part of a summary judgment motion and may not be used to attack the judgment on the pleadings. However, even if the declarations were considered, they do not supply the rule in this case. Appellant has confused the existence of a duty with evidence establishing the applicable standard of care. ■ An expert cannot create a legal duty of care where none otherwise exists. (*Benavidez v. San Jose Police Dept.* (1999) 71

---

[6]The constitutionality of such a requirement, if it existed, is not before us. "The Constitution protects individuals, men and women alike, from unjustified state interference, even when that interference is enacted into law for the benefit of their spouses." (*Planned Parenthood of Southeastern Pa. v. Casey* (1992) 505 U.S. 833, 895-896 [112 S.Ct. 2791, 2830, 120 L.Ed.2d 674] [when wife and husband disagree on decisions regarding pregnancy, wife's view prevails]; *Cameron v. Bd. of Educ. of Hillsboro, Ohio Sch. D.* (S.D.Ohio 1991) 795 F.Supp. 228, 237 [a woman possesses the right to become pregnant by artificial insemination].)

Cal.App.4th 853, 865 [84 Cal.Rptr.2d 157], ["Courts must be cautious where an expert offers legal conclusions as to ultimate facts in the guise of an expert opinion"]; see also *Kockelman v. Segal* (1998) 61 Cal.App.4th 491, 499 [71 Cal.Rptr.2d 552] [expert testimony required to establish factual issue of parameters of doctor's professional standard of care]; *Padgett v. Phariss* (1997) 54 Cal.App.4th 1270 [63 Cal.Rptr.2d 373] [existence of duty is question of law; standard required to fulfill duty is question of fact].) The referenced declarations merely state the opinions of those experts as to whether Dr. Kong violated what the experts believe are accepted ethical standards of medical care. We are not presented with the issue of whether Dr. Kong is subject to professional discipline as a result of the facts alleged in the complaint. Neither the statute nor the expert declarations support the creation of a duty to appellant.

*Public Policy Precludes Liability in This Case*

Appellant argues that a physician who performs an artificial insemination on a married woman has a special relationship with the husband of that woman. The relationship, it is argued, gives rise to a duty to refrain from performing the procedure without the husband's knowledge and consent. Appellant claims the doctor is obligated to treat the married couple as the patient, and to obtain consent of both members of the couple prior to performing artificial insemination. But the Supreme Court has rejected appellant's invitation to treat the two parties in a marriage as a single being. " '[T]he marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. . . .' " (*Planned Parenthood of Southeastern Pa. v. Casey, supra,* 505 U.S. 833, 895-896 [112 S.Ct. 2791, 2830].)

In cases of negligence, a plaintiff's action must be founded on a duty owed to the plaintiff; not a duty owed only to some other person. (Prosser & Keeton, Torts (5th ed. 1984) § 53, p. 357.) " 'Negligence in the air, so to speak, will not do.' " (*Ibid.*) There are many factors to be considered in finding a duty of care based on a special relationship. However, " '[i]n the final analysis it is the court's expression of the sum total of those conditions of policy which lead the law to say that a particular plaintiff is entitled to protection [citations].' " (*Alexandria S. v. Pacific Fertility Medical Center, Inc., supra,* 55 Cal.App.4th at p. 117; Prosser & Keeton, *supra,* at p. 358.)

Courts that have considered facts similar to those alleged in appellant's complaint have determined that the public policy component of the duty analysis weighs against appellant's contentions. At the core of appellant's action is his demand for compensation for the harm caused when another

man impregnated his wife. Such actions are barred by the so-called anti-heart-balm legislation. (Civ. Code, § 43.5.)[7] Cases involving similar facts concluded that those actions implicated the abolished causes of action.

In *Richard P. v. Superior Court* (1988) 202 Cal.App.3d 1089 [249 Cal.Rptr. 246], the plaintiff filed an action seeking to establish his paternity of two children born during his affair with Linda, who was married to Gerald. (*Id.* at p. 1091.) After a stipulated judgment in the paternity case in which Gerald admitted Richard's paternity and waived any rights as father of the children, Gerald brought an action against Richard for fraud and intentional infliction of emotional distress. (*Ibid.*) The court determined that the case was barred by public policy and issued a writ directing entry of an order sustaining a demurrer to the complaint.[8] (*Id.* at p. 1096.) The court stated: "For a man married to the mother of children at the time of their conception to be allowed to bring a tort action such as this against the true father of the children could, . . . 'seldom, if ever, result in benefit to a child.' [Citation.]" (*Id.* at pp. 1095-1096.)

In *Nagy v. Nagy* (1989) 210 Cal.App.3d 1262 [258 Cal.Rptr. 787], a former husband brought an action against his former wife, alleging fraud and other tort causes of action for misrepresenting that the husband was the father of a child born during the marriage. In language similar to that used by appellant, the father in *Nagy* alleged that he developed " 'a very close and intimate relationship with [the child] and did and performed all acts that a father would towards a son.' " (*Id.* at p. 1268.) The court stated it was unaware of any law that would permit recovery of damages for developing an intimate relationship with a child. (*Id.* at p. 1269.) " '. . . It does not lie within the power of any judicial system, however, to remedy all human wrongs. There are many wrongs which in themselves are flagrant. For instance, such wrongs as betrayal, brutal words, and heartless disregard of the feelings of others are beyond any effective legal remedy and any practical administration of law. [Citation.] To attempt to correct such wrongs or give relief from their effects "may do more social damage than if the law leaves them alone." [Citation.]' " (*Ibid.*) Although the court did not condone the deception, it refused to allow a cause of action for misrepresentation when brought by a nonbiological parent for developing a close relationship with a child. (*Id.* at pp. 1269-1270.)

---

[7]Civil Code section 43.5 provides: "No cause of action arises for: [¶] (a) Alienation of affection. [¶] (b) Criminal conversation. [¶] (c) Seduction of a person over the age of legal consent. [¶] (d) Breach of promise of marriage."

Civil Code section 43.4 likewise precludes an action for a fraudulent promise to cohabit after marriage.

[8]As a matter of policy, the court found: "We conclude here that any wrong which has occurred as a result of Richard's actions is not one which can be redressed in a tort action." (*Richard P., supra,* 202 Cal.App.3d at p. 1094.)

In *Smith v. Pust* (1993) 19 Cal.App.4th 263 [23 Cal.Rptr.2d 364], a husband filed a complaint against his wife's therapist who had a sexual encounter with the plaintiff's wife. The complaint alleged causes of action for negligence, bad faith and intentional and negligent infliction of emotional distress. (*Id.* at p. 268.) The court affirmed the trial court's summary judgment in favor of the therapist, finding that the "long-dead causes of action" for alienation of affection or criminal conversation were at the foundation of the husband's complaint. (*Id.* at p. 269.) Those causes of action were abolished by virtue of Civil Code section 43.5. (*Richard P. v. Superior Court, supra,* 202 Cal.App.3d 1089, 1093.) In addition, the *Smith* court determined there was no independent duty because the husband was not the therapist's patient. (*Smith v. Pust, supra,* 19 Cal.App.4th at p. 273.)

Appellant relies on language in the *Smith* case, which notes that conduct which otherwise constitutes an abolished cause of action may be actionable if it breaches a duty that is independent of the old causes of action. (*Smith v. Pust, supra,* 19 Cal.App.4th 263, 269.) This discussion in *Smith* does not aid appellant. ■ After reviewing the applicable California authorities, the *Smith* court set out the two requirements for establishing an independent duty of care in similar cases: "(1) a genuine professional relationship must exist between the plaintiff and the defendant, and (2) the wrongful conduct must have a meaningful connection to the purpose of that professional relationship." (*Id.* at p. 270.)

Appellant has not pled either of these requirements. Appellant does not contend that he ever consulted with or was counseled by Dr. Kong regarding artificial insemination or the expected outcome of the procedure performed on his wife. He admits he was unaware of the procedure for years after it occurred. As the court in *Smith* concluded: "[Defendant] had no more duty to [husband] than any other person not to cause [husband] emotional distress by having sex with [husband's] wife. No 'independent duty' exists to rescue the case from its essential nature as a suit for alienation of affection and criminal conversation." (*Smith v. Pust, supra,* 19 Cal.App.4th at p. 273.)

Another case cited by appellant involved a defendant psychiatrist who undertook to provide marital counseling to both the husband and wife and differs from this case. (*Richard H. v. Larry D.* (1988) 198 Cal.App.3d 591 [243 Cal.Rptr. 807].) As a psychiatrist rendering marriage counseling, the doctor owed his patients a special duty " 'to use due care for the patient's health in the conduct of the therapist-patient relationship.' " (*Id.* at p. 596.) Appellant's citation of *Richard H.* merely illustrates the deficiency in his own complaint. Appellant has affirmatively indicated he cannot plead that he was respondent's patient or that he even knew of the alleged artificial insemination.

Other cases cited by appellant involve direct misrepresentations of sterility by a defendant to a plaintiff to induce her to have sexual intercourse and false promises of marriage to obtain money. (*Barbara A. v. John G.* (1983) 145 Cal.App.3d 369 [193 Cal.Rptr. 422]; *Mack v. White* (1950) 97 Cal.App.2d 497 [218 P.2d 76].) Appellant has not pled a direct misrepresentation was made to him about the insemination procedure.[9] Rather, appellant's complaint alleges failure to disclose and concealment of facts. ■   A duty to disclose facts arises only when the parties are in a relationship that gives rise to the duty, such as " 'seller and buyer, employer and prospective employee, doctor and patient, or parties entering into any kind of contractual agreement.' " (*Wilkins v. National Broadcasting Co.* (1999) 71 Cal.App.4th 1066, 1082 [84 Cal.Rptr.2d 329].)   ■   In this case, there was no special relationship to support imposition of an independent duty on appellant's ex-wife's doctor. Although the facts in appellant's complaint are unusual, they are not dissimilar to the facts of the preceding cases. The complaint is barred by the policy of the anti-heart-balm statute, recognizing that the law will not try to repair certain ruptured relationships in the hope that dreams of the future might be better than the history of the past.

*Appellant Has Not Stated a Cause of Action for Interference with Procreative Rights*

Appellant relies on dicta in *Alexandria S. v. Pacific Fertility Medical Center, Inc., supra,* 55 Cal.App.4th 110, 120-121, footnote 2, to argue that the court in that case specifically recognized a cause of action by a husband against a physician for interference with procreative rights. *Alexandria S.* was an unsuccessful action brought by a child against a clinic and physician who failed to certify the signature of the father on the artificial insemination consent form. The cited comment in *Alexandria S.* refers to an Ohio case as being the only case the court found that discussed a doctor's liability for failing to properly obtain consent for an artificial insemination. (*Id.* at p. 120, citing *Kerns v. Schmidt* (1994) 94 Ohio App.3d 601 [641 N.E.2d 280].) In *Kerns,* a husband brought an action against his former wife and her physician for failing to obtain his consent to artificial insemination by a nonspousal donor. The court found that the husband, who had been ordered to pay child support, could not relitigate the issue of parentage already decided in the

---

[9]Appellant argues that respondent made a misrepresentation by creating a false medical record when he signed the child's birth certificate. Although the certificate names appellant as father of the child, the line which certifies that information on the certificate is signed by appellant's ex-wife. The line signed by respondent merely states: "I certify that the child was born alive at the date hour and place stated." This certification of live birth is the only attestation required of a physician pursuant to Health and Safety Code section 102425, subdivision (a)(8). Respondent's signature on the birth certificate attesting to a live birth is not a misrepresentation.

divorce decree. However, the court determined that although the statute provided no remedy when a physician failed to obtain the husband's consent, the husband could maintain a cause of action for negligence against the physician who affirmatively assured the husband that no artificial insemination would be performed without the husband's consent. (*Id.* at pp. 286-287.)

Unlike the California statute, the Ohio statute relied upon in *Kerns* provided that nonspousal artificial insemination of a married woman could only occur if she and her husband signed the consent. (*Kerns v. Schmidt, supra,* 641 N.E.2d at p. 281, fn. 1.) The California law contains no mandatory consent provision. This difference between the two statutes distinguishes *Kerns.*

Furthermore, the husband in *Kerns* did not want any more children and had undergone a vasectomy. Although he accompanied his wife on her first visit to the doctor to discuss artificial insemination, the husband claimed that he never consented to the procedure and that the doctor assured him there would be no insemination without his consent. When the child was born, the husband moved out and commenced divorce proceedings. (*Kerns v. Schmidt, supra,* 641 N.E.2d at pp. 281, 287.) The husband in *Kerns* claimed that the unconsented-to insemination constituted an infringement on his decision not to procreate.

Appellant has not alleged facts like those that supported the decision in *Kerns.* Appellant has not alleged that respondent made any representation regarding the outcome of the procedure directly to him. Unlike the plaintiff in *Kerns,* appellant has not been deemed the father and was not ordered to pay support. He alleged that he was happy when the child was born and treated him like a son for over four years. Appellant neither seeks parental status, nor alleges a lack of desire to procreate. (*Planned Parenthood of Southeastern Pa. v. Casey, supra,* 505 U.S. 833, 896 [112 S.Ct. 2791, 2830].) The statutory basis and the harms sought to be addressed are not similar to the circumstances in *Kerns.* The dicta in *Alexandria S.* do not apply to appellant's case.

*Appellant Cannot Recover for Emotional Distress on a Direct or Bystander Theory*

As respondent notes, appellant's allegations that respondent had a duty to the husband of his patient implicates the analysis of *Molien v. Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916 [167 Cal.Rptr. 831, 616 P.2d

813, 16 A.L.R.4th 518]. In *Molien*, a husband was allowed to recover from his wife's doctor for a misdiagnosis of syphilis. The doctor instructed the wife to inform the husband, who was required to undergo testing himself. The couple eventually divorced as a result of the suspicion generated by the negligent diagnosis. (*Id.* at pp. 919-920.)

The result in *Molien*, however, was explained and limited in subsequent cases. In *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.* (1989) 48 Cal.3d 583 [257 Cal.Rptr. 98, 770 P.2d 278], the court explained that the doctor in *Molien* assumed a duty to the husband when he directed the wife to convey his erroneous diagnosis to the husband and to advise him to be tested. The *Marlene F.* court stated that damages for emotional distress are recoverable "when they result from the breach of a duty owed the plaintiff that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." (*Id.* at p. 590.)

"When the plaintiff is not the defendant's patient, however, '[c]ourts have not extended the *Molien* direct-victim cause of action to emotional distress which is derived solely from a reaction to another's injury' [citation]." (*Huggins v. Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 130-131 [24 Cal.Rptr.2d 587, 862 P.2d 148].) The court in *Burgess v. Superior Court* (1992) 2 Cal.4th 1064 [9 Cal.Rptr.2d 615, 831 P.2d 1197] commented in dicta that while a mother has a cause of action for injuries to her child during prenatal care, the father, who usually has no physician-patient relationship with the defendant doctor, must meet the requirements for bystander liability set out in *Thing v. La Chusa* (1989) 48 Cal.3d 644 [257 Cal.Rptr. 865, 771 P.2d 814] in order to recover from the negligent doctor. (*Burgess v. Superior Court, supra,* 2 Cal.4th 1064, 1077-1078, fn. 8.) .

The court in *Thing* stated those requirements, as follows. "[W]e shall conclude that the societal benefits of certainty in the law, as well as traditional concepts of tort law, dictate limitation of bystander recovery of damages for emotional distress. In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim, (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." (*Thing v. La Chusa, supra,* 48 Cal.3d 644, 647.)

Appellant, as the husband of respondent's patient, was not present at the time of the artificial insemination, and he was not aware of it causing injury

to anyone. He suffered no distress until the time of his divorce, nearly five years later.

*Intentional Infliction of Emotional Distress*

Appellant argues that even if he is barred from recovering on theories of negligence, Dr. Kong should be liable for his intentional wrongful acts. This theory is negated by the result in *Smith v. Pust, supra,* 19 Cal.App.4th 263. ▮ The wrongful conduct alleged in support of a cause of action for intentional infliction of emotional distress must be conduct that is directed at the plaintiff. "[I]t is not enough that an act be outrageous to state a cause of action for intentional infliction of emotional distress. Intentional means more than the nonaccidental nature of the wrongful act. That act must also be *directed* at the plaintiff or in the presence of the plaintiff." (*Id.* at p. 274.)

As the court in *Smith* stated: "No doubt there have been times in human experience when the purpose of sexual relations with one person was 'directed at' that person's spouse. This case, however, is not one of them." (*Smith v. Pust, supra,* 19 Cal.App.4th at p. 274.) The intentional act alleged in appellant's complaint was the artificial insemination with respondent's sperm. Appellant was not aware of or present at the time of this intentional act. There is no indication or allegation that this action was directed at appellant in any way.

Although the pain, humiliation and suffering experienced by appellant are palpably clear from the allegations of his complaint, he has stated no cause of action against the man who fathered his wife's child. Counsel candidly admitted at oral argument of the motion for judgment on the pleadings that he could not plead that appellant provided semen for the insemination procedure.[10] He could not plead that appellant had a physician-patient relationship with respondent, and in fact pleaded that appellant was completely unaware of the procedure for over four years. Counsel also told the court that the wife would not be joined in this action. We do not condone the alleged deceptive, hurtful behavior, but appellant has not identified a legal theory that would allow him to recover on these facts.

---

[10]The complaint had alleged that: "Defendants claim to have believed that at least some of the semen provided for the insemination was Plaintiff's, and as defendants knew that Sil Shin was married to plaintiff, plaintiff must be considered to be a patient of Defendants." In a contradictory allegation, the complaint states that Dr. Kong knew at all times that he, and not appellant, was the biological father of the child. Counsel ultimately conceded that appellant had not provided semen for the procedure.

## CONCLUSION

The judgment is affirmed.

Strankman, P. J., and Swager, J., concurred.

Appellant's petition for review by the Supreme Court was denied July 19, 2000. Mosk, J., was of the opinion that the petition should be granted.